# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Heping Li                                         )
2036 Fort Davis Street, SE, Apt. A    ) For Expropriation of Private Property in Violation of
Washington, DC 20020                      ) Law of Nations
                                                        ) Alien Tort Act; Torture, Forced Labor, Distortion
Xiaogang Shi                                     ) Terrorist Hostage Taking, Unjust Enrichment,
2036 Fort Davis Street, SE, Apt. A    )  Extrajudicial Imprisonment,  Pain and Suffering
Washington, DC 20020                      )  Unjust Enrichment, Defamation
                                                        ) Trial by Jury Demanded
Yanlan Huang                                    )
712 H Street, NE, Apt. 1433              )
Washington, DC 20002                      ),
                                                        )
And                                                  )
                                                        )
Mary Roes, as Unnamed Plaintiffs     )
With IDs withheld for Their Safety in PRC  )                                              )
                                                        )
Plaintiffs                                          )
                                                        )
v.                                                     )
                                                        )
Keqiang Li (For his official capacity)   )
The Premier                                      )
The State Council of China (PRC)       )
2 Fuyou Street, Xicheng District         )
Beijing, China 100017                       )
                                                        )
Shengkun Guo (for his Official Capacity)  )
The Secretary General                       )
The Central Committee of the            )
Political and Legal Affairs                  )
14 Bei Chizi Street, Dongcheng          )
District, Beijing, China 100006           )
                                                        )
Xinshe Lu (for his Official Capacity)   )
The Secretary of the CCP Branch of    )
Guangxi Zhaung Ethnicity Autonomous  )
Region  and The Chair of the Government  )
Of Guangxi Zhaung Ethnicity             )
Autonomous Region                          )
103 Nationality Avenue                      )
Nanning City, Guangxi, China            )
                                                        )
                                                        )
Defendant Yaojun Meng                     )

| | |
|---|---|
| (for His Official Capacity) | ) |
| the Chief Prosecutor | ) |
| The Intermediate People's | ) |
| Procuratorate of Guiling City | ) |
| 9 Xinyi Road | ) |
| Guilin City, Guangxi, China | ) |
| | ) |
| Industrial Commercial Bank of China | ) |
| t/a ICBC U.S. Branch Headquarters, aka. | ) |
| ICBC Financial Services LLC. | ) |
| 202 Canal Street | ) |
| New York, NY 10013 | ) |
| | ) |
| And | ) |
| | ) |
| John Does | ) |
| As All Other | ) |
| Presently Unnamed and to be | ) |
| Identified Defendants who involved, | ) |
| Aided and abetted the named Defendants | ) |
| | ) |
| Defendants | ) |

## COMPLAINT

**Nature of the Case**

1. This is a Complaint filed by several U.S. nationals (including U.S. citizen and legally admitted permanent residents) of original Chinese ethnicity being the victims of illegal expropriation of their sizable overseas property in violation of international law, of Federal law, of tortures and other universally condemned crimes by the totalitarian regime of the People's Republic of China (PRC) under the raign of Chinese Communist Party (CCP), an infamous totalitarian ruling bloc.

2. The U.S. District Court has subject matter jurisdiction over those selected defendants and may exercise long arm personal jurisdiction over those defendants in protection of vital interests of the U.S. nationals living in the United States pursuant to Federal Law.

3. Plaintiffs, by and through their attorneys, allege upon personal knowledge and belief as to their own circumstances, and upon information and belief (based on the preliminary investigation of the undersigned counsel) as to all other matters, that substantial evidential support does exist or will exist after a reasonable opportunity for further investigation and discovery as a result of trial and pretrial proceedings, in support of the following:

4. Named Plaintiffs and additional unnamed and to be identified Plaintiffs (hereinafter referred to

collectively as "Plaintiffs") are either a U.S. citizen (Plaintiff Xiagang Shi) or Nationals of the United States (Lawfully Admitted Permanent Residents of the United States, involving Plaintiff Heping Li and Plaintiff Yanlan Huang) currently residing in the United States.  All Plaintiffs  have been and are being subjected to such grave violations of some of the most universally recognized legal norm of such law of nations as well as international treaties to which the United States is a member state, and international customary law for which the United states has long observed and upheld, as well as the law of the United States, such as illegal expropriation of private properties against U.S. citizens, nationals, and corporations, and *Jus Cogens,* including prohibitions against torture, cruel, inhuman, or other degrading treatment or punishment, arbitrary arrest and prolonged detention for exercising their rights, state-sponsored expropriation of U.S. citizens' or U.S. national's lawful property in violation of the law of nations, international prohibition against slavery and forced labor, etc.

5.  The defendants and others involved in this case are state actors who violate international law and U.S. law and obey the law-abiding U.S. citizens and U.S. A considerable amount of private property has been illegally expropriated in the hands of the nationals. Therefore, it is necessary to briefly introduce PRC

## Back Ground Information of the Case

6.  This instant case involves, among others, Defendants as state actors of illegal expropriation of sizable private properties from law abiding U.S. citizens and nationals in violation of international law and the law of the United States, it appears necessary to give a brief introduction about the background information as of general country condition of the People's Republic where cause of action arises.

7.  The Mainland China under the name of the People's Republic of China (PRC) is a totalitarian regime of thugocracy under the dictatorship of Chinese Communist party (CCP), a totalitarian Mafioso clique as the ruling bloc since 1949. Starting Korean War period around 1950, the CCP has mobilized violent land reform to expropriate real property from its land owner through state organized violence, in which millions of private real property owners were eliminated together with their lawful entitlement to land and houses, in massive executions, through out the nation except for "yet to be liberated areas" of   Taiwan and Hong Kong.  Such a violent expropriation of private properties, we call it "first land reform by state organized violence".

8.  On September 20, 1954, PRC promulgated the PRC Constitution for the first time. Later, it was revised many times.  No matter how many times it has amended its own "constitution",  Article 1 thereof always remains unchanged: manger dictatorship of proletariat as the Stalinist nature of its state mobilized violence and political and legal discrimination against the super majority of the PRC's nationals.  With such a notoriously infamous totalitarian declaration in place, taking, looting, expropriation and nationalization of private properties and assets by state organized violence under the name of "dictatorship of proletariat"  are always commonplace.

9.   After the year 1999, when all national wealth accumulated through generations since 1949 in the

state owned enterprises was distributed among corrupted Chinese communist red families and novel-riches in inclusion thereto, being indicated that the State owned enterprises' total debts were exceeding the total assets, meaning an insolvency by its entirety, the mode of redistribution of the accumulated national wealth has been drastically changed into a jungle rule type taking,  looting and expropriation targeting private owners, particularly private owners of real property.   Some scholars depcted such "expropriation drive as the 2nd violent land reform using organized state power under the name of dictatorship of proletariat. A replica of communist China's 1st land reform by violence starting nationwide in 1950, yet in more sophisticated forms.  Expropriation and creeping expropriation of private property was taken, from time to time, are in the sheer disguises of "law enforcement".  While in its deep nature, it makes no difference to what happened during the first wave of "land reform by state organized violence." One homogeneous process gets through the two "reforms" in big gap of time frames: jungle rule.

10. Presenting these general background of the country condition and practice may help this Honorable Court to understand the nature of this instant case.  About one year or so after the triggering facts occurred in communist China's the United States CONGRESSIONAL-EXECUTIVE COMMISSION ON CHINA 108th CONGRESS, SECOND SESSION held a fact finding session on the Capitol Hill on JUNE 21, 2004, which, for relevant part, finds:

"…over the past year, urban demolitions and rural land acquisitions have become the leading causes of social unrest in a great many places in the Peoples' Republic of China [PRC]. Since 1991, nearly 900,000 families have been relocated in Shanghai. Last year in Chengdu, 24,000 families were moved. The same story seems to be  true across cities in China.  The rapid pace of development and the high value of land in China continues to fuel corruption and abuse in land deals. A recent government survey uncovered more than 150,000 irregular  land transactions in the PRC. Reports of protests, sometimes violent, hit the news wires almost daily, and the numbers of petitions and administrative lawsuits related to property disputes has increased sharply in recent years. This trend is clearly causing alarm in the central government, which has issued a series of directives in an attempt to deal with the problem. "Seizures in China" CONGRESSIONAL-EXECUTIVE COMMISSION ON CHINA 108th CONGRESS, SECOND SESSION, JUNE 21, 2004,  Printed for the use of the Congressional-Executive Commission on China; (U.S. Government Printing Office and World Wide Web: http://www.cecc.gov)

11. When real property with speedy appraisal has become ultra-valuable wealth, looting and robbery by powerful dictatorship dependent state house, no matter whether they were ending up in the deep pockets of corrupted communist loyalists, the game of massive scale of expropriation was carried out by law enforcement under the "dictatorship of proletariat".  It is an unsophisticated and naked jungle rule games coupled with violence, blood or staged "law enforcement" mode.  Those who do not have strong back-up from powerhouse, or those whose back-up powerhouse relation are less powerful or collapsed are fallen into the line of victims. Some scholars calls such an expropriation drive as the second wave of China's landform by violence and bloodsheds, taking real property from private property owners for free using the state power machine, namely, the dictatorship of proletariat.   At the beginning, when the property owners are foreign country citizens, corporations, or nationals, especially a citizens or nationals of the United States, those corrupted communist ruling bloc elites would show certain fear and respects.  By and by, their fear and restraints grow thinner.

12.      The keynote speaker's investigative report to the Conference by the Commission stated:

"In the urban land-use sector, and so, too, with enterprises across the spectrum from state-owned behemoths to spontaneously arising private firms. There has been an ambiguity, a weakness, a vulnerability, and a paucity of enforcement mechanisms, at least by Western standards, to property rights in all these areas."

13.      Fact-finding reveals that corruption is the driving force behind these expropriation of lands:

"But what they encounter there are problems with corruption, which are endemic in the system. Local officials often have financial interests in the projects. Some of them run companies that actually do the demolition, others are investors in development projects or may be profiting from fees associated with the process of demolition and eviction."

In such a land expropriation drive, the Court systems were found to have been politically interfered at "every level":

"The courts are also often subject to Communist Party interference at every level, so even judges who may be tempted to find in favor of evicted residents and homeowners may find that they are encountering political pressure that prevents them from doing so."* Statement Of Sara (Meg) Davis, Researcher, Asia Division, Human  Rights Watch And Visting Scholar,Columbia University's Weatherhead East Asian Institute, New York, NY.

---

*PRC is a dictatorship under the one-party dictatorship of the CCP of totalitarian character. The Constitution and all laws enacted by it have not been approved by the people or their elected representatives thereof.  Because their so-called people's representatives are the so-called "people's representatives" are simply hand-picked by the CCP party bosses, rather than elected by Chinese people.   The one-person, one-vote election has never been conducted since the CCP took the power of the Mainland since 70 years before.

Although the PRC has been in power for 70 years, although there are likely "Constitution" and "laws" , never has it been a true rule of law, and it is not such a free country that is ruled by law at all.   The PRC Constitution, subject to such preemptive qualification as Article one's "dictatorship of proletariat", discriminative derogation of super majority of the populace, and of Article 24's Fascist-Stalinist brain wash, generally states: citizens are equal before the law, the state respects and protects human rights, and citizens have Freedom of speech, of assembly, of demonstration,  of  freedom of *religious "belief"*, with promise that Chinese citizens' personal freedom is not infringed, citizens' Personal dignity is inviolable, citizens' houses are inviolable, citizens' legal private property is inviolable, and the State means to protect these enumerated constitutional "rights" and "freedoms",

The legal rights and interests of the private economy, the state's protection of foreigners' investments, etc., these legal provisions look very Good, but in actual implementation, it is quite the opposite.

Under the one-party dictatorship of the CCP, PRC has done too many violations of the Chinese Constitution, international laws, and United States laws    Law crimes. For example: 8964 student movement, because there is no freedom of speech, a large number of students were shot; Dr. Liu Xiaobo, Nobel Peace Prize Laureate, the former teacher of Peking University, was suspiciously murdered in jail while serving his long term sentence behind bars simply because his advocacy of peaceful, rationale, non-violent resistance and his auspices of 08 Charter calling for institutional democratization.

Severely persecuted in genocidal patterns and ruthlessly tortured and killed massively are also Falun Gong practitioners in addition to brutally depriving their freedom of faith and of meditation, even meditation! thousands of practitioners on grass root levels  were illegally murdered simply because these meditators' organs are found to be cleaner and purer, hence traded more expensive in China's human organ market!

14. Illegal takings, lootings, expropriations by powerhouse or corrupted communist officials behind

powerhouse as state actions for the easy benefits ended up in the pockets of corrupted officials, under the sheer disguises of law has become commonplace under the dictatorship of totalitarian Kleptocracy.   Such a practice in violation of universally accepted legal norms have been mostly focused upon domestic owners of properties, real or movable, tangible or intangible.   Yet such an expropriation drive has from time to time also takes as victims covering the U.S. Corporate entities as well as natural persons, citizens or legally admitted permanent residents of the United States under its expropriation drive, immediate expropriation or creeping expropriation.

15. When real property with speedy appraisal has become ultra-valuable wealth, looting and robbery by powerful dictatorship, no matter whether they were ending up funneling the fruits of such illegal expropriation in the deep pockets of corrupted communist loyalists, the game of massive scale of expropriation was carried out by law enforcement under the "dictatorship of proletariat".   It is an unsophisticated and naked jungle rule games coupled with violence, blood or staged "law enforcement" mode.   Those who do not have strong back-up from powerhouse, or those whose back-up from the powerhouse are not as powerful as those takers. Some scholars calls such an expropriation drive as the second wave of China's landform by violence and bloodsheds, taking real property from private property owners for free using the state power machine, namely, the dictatorship of proletariat.   At the beginning, when the property owners are foreign country citizens, corporations, or nationals, especially a citizens or nationals of the United States, those corrupted communist ruling bloc elites would show certain fear and respects.   By and by, their fear and restraints grow thinner.

16. On March 11, 2018, PRC's latest amendment to the constitution, the constitution amended under the CCP's recommendation, formally put that the "CCP leadership

17. is the most essential feature of socialism with Chinese characteristics" written in the first and second paragraphs of the Constitution. CCP is the formulation of the Constitution and Law. The law is also the implementation of the Constitution and laws, and this kind of implementation has effectively entered all areas of national governance, various Links, all aspects. (Based on public information "PRC Constitution")

18. 12. CCP is the only ruling party in PRC, the highest political leadership of PRC, and fully reflects the "Trinity" in the Constitution

19. The institutional apparatus of the CCP,  the PRC, and the "trinity" leadership system of the Chinese People's Liberation Army are all under the lone life long dictator Xi Jinping, Chairman of the PRC, Secretary General of the CCP and Chairman of the Central Military Commission of the People's Liberation Army (PLA).

20. The CCP is the boss of the PRC, Xi is the one the CCP's top. The "state-owned enterprise" under the name of PRC State Council (i.e., the central government) has been called as "centralized enterprise".

21. Among these "centralized enterprises, 126 enterprises monopolized ones were those largest "central enterprises",  while many of them are listed in the United States stock exchange market. (Based on public information)

22. The Central Committee of the Chinese Communist Party (CCP) recently issued a "Regulations on CCP's Political and Legal Work" which clearly stipulates that the Central Committee of the Chinese

Communist Party（CCP） exercises absolute leadership over political and legal work through out China..

23. The Central Commission of Politics and Law is an internal party organization as the functional instrument that the CCP implements to leadership of judicial institutions at all levels, and performs the duties of representing the CCP's Central Committee.

24. The Central Commission of Politics and Law is one of the direct organizations of the Central Committee of the Chinese Communist Party. Its specific functions are to guide and coordinate courts, procuratorates, and public security agencies, Customs, national security agencies, judicial administrative agencies, etc.

25. According to the US Department of State (USDOS) Annual Report on Human Rights Practices, CCP is the highest authority of PRC. CCP is now in the world.

26. One of the few remaining anti-human repressive ruling cliques. The CCP regime is the only one in the world that constitutes the growing lethal threats against the United States and its allies. Totalitarian regime threatened by deadly strategy.

27. Mike Pence, Vice President of the United States, US Secretary of State Mike Pompeo, United States, the Attorney General William Barr made several public speeches, which fully confirmed the PRC under the CCP, a serious violation of international law, serious Violation of US law.

28. Illegal expropriation taking place victimizing the group of these three named Plaintiffs occurred in such a macro-political landscape.

**Parties:**

Plaintiff  Heping LI

29. Plaintiff Heping Li is a national, a legally admitted permanent resident (LPR) of the United States, of ethnic Chinese origin.

30. Plaintiff Heping Li is currently residing at 2036 Fort Davis Street, Apt. A, Washington, DC 20020.

Plaintiff Heping Li was falsely arrested by the Public Security Bureau of Guilin City, Guangxi, China, being aided and abetted by Defendant Regional Branch of Chinese Communist Party of Guangxi Zhuang Autonomous Region, under the oversight of Defendant Central Commission of Politics and Law of Chinese Communist Party, Beijing, China,.

31. Under the direction of the Central Commission of Political and Law,  Guangxi Zhuang Autonomous Region (Provincial) Party Committee and the government of Guangxi Zhuang Autonomous Region

(Province) (abbreviated as: Guangxi Government), together with members of Guilin Municipal Commission of Politics and Law, the Disciplinary Inspection Committee of the Guangxi Zhuang Autonomous Region (Province) and the Guilin City People's Procuratorate carried out concretely and started a state-organized violent terrorist attack by a conspiracy targeting Plaintiff Heping Li

32. On August 16, 2002, plaintiff Heping Li who was physically in Shanghai, China, and just came out of a restaurant and walked to his own car. Suddenly, a total of 5 plain cloth people were rushing to him and violently raided him. Among the gang of 5, there were Ye Xiaojun from the The People's Procuratorate of Guilin Cityand an official named Liao from the Guangxi Disciplinary Inspection Commission. These assailants forcibly took his car keys, put handcuffs and foot chain, kidnapped him into an unnamed address in Shanghai without showing him Arrest warrant.

33. Plaintiff Heping Li, being a private business entrepreneur, was then living in Shanghai temporarily. Mr. Li was neither a Communist Party member nor a state official. Heping Li was then, without any legal procedures, was taken away under the brutal violence of the Guangxi Discipline Inspection Commission and the Guilin City Procuratorate. Mr. Li was jailed for four days of in custody. During his detention, Ye Xiaojun of the The People's Procuratorate of Guilin Cityreturned to Guilin and brought a detention notice back a Detention Notice from the Guilin Public Security Bureau.

34. After Plaintiff, Heping Li was illegally held by the Guangxi Discipline Inspection Commission and the People's Procuratorate of Guilin City, they secured a pretrial detention decision from the Guilin Public Security Bureau. Transferred him from detention facilities of Shanghai to that of Nanning, Guangxi, there he was secretly detained in a make-shift detention cell from microwave guest house in Nanning, watched by the armed police guards for 24 hours monitoring. Mr. Li was not allowed to see family members, nor lawyers, in such incommunicado detention. Later, he was transferred from make shift cell into Guilin City Detention Center after he was indicted.

35. Plaintiff Heping Li, during the 145 days of secret detention, the The People's Procuratorate of Guilin Cityused forged "evidence" to force plaintiff Heping Li signed a false Confession that reads: "Heping Li bought Shanghai real estate with Yanlan Huang's (ex-wife) corrupt money", plaintiff Heping Li refused to sign the confession being thrust to him for his signature, and was therefore brutally tortured, including deprivation of sleep while placing him in solitary confinement cell with uneven ground inside an excessively narrowed space which does not allow the inmate to stand up or even sit straight. The interrogators did not allow the guards to provide drinking water while Mr. Li was made to expose himself to high-voltage light bulbs day and night dehydrated because of sweater all over under high temperature under the hot bulb, and fell black out due to dehydration hours after. To keep him barely live on the verge, the guards feed him with a few drops of water to keep him breathing in laboring. During the interrogation, the interrogators called for guards to use electrical baton to slam and electrify all sensitive body parts including his genital and anal areas making him instinctively shocked and jumped and desperately yelled, until he showed the symptoms of heart arrests.

36. Another cruelty punishment is what was called cross-back torso handcuffing of two limbs by chaining two thumbs with one arm twisted from shoulder. The most horrifying torture is to feed Mr. Li forcibly with strangely odorous pills which they did not tell you the name, neither was them prescribed by any physicians or nurses. After taking the pill, one become gradually confused in fantasy, and became very cooperative with the interrogator. For unknown reasons, Mr. Li as a

criminal defendant facing capital punishment, was coerced to have his blood draw often times for allegedly "Study purpose". With so many times of blood drawing, Mr. Li, when he regained some of his consciousness, he thought that the purpose of such repeated blood examination means that he was placed the line of inmates organ donors after being executed.  His repeated disposition into long-term solitary confinement in addition to coerced "meditation" has made him as a man of completely different personality.

37.  Plaintiff Heping Li, during his false imprisonment, was abducted by the state in an organized terror, cruelly tortured, inhumane abuse, causing plaintiff Heping Li to suffer brain damage; renal failure, and permanent male dysfunction (ED) and reproductive organ injury.  All these trauma triggering devastating health complications left him in near-death conditions before being finally released.

38. .On February 11, 2003, the The People's Procuratorate of Guilin Cityfalsely accused plaintiff Heping Li. The contents of the accusation: Heping Li and Yanlan Huang (Ex-wife) Suspected in embezzling 30 million RMB together for the purchase of 52 apartments in Shanghai under the name of Heping Li.

39. Before the false criminal prosecution merely designed and devised for the 2nd "land reform"against Plaintiff Heping Li and other relators, before  Conviction, sentencing and the judgment was declared and carried out, Plaintiff Heping Li's ultravaluable real property, mostly 19 Units of best located apartments, with square footage of 26,000 sq ft, in central area of Shanghai, whose then market value was approximately RMB 181,866,625 Yuan (approximately US$25.98Million),  had been expropriated and put for "midnight sale among cousins" on  without Plaintiff's consent and authorization starting October 25, 2003, and was purchased by a red-caped Taiwan citizen Shouxiong Cai (AKA Hsow Hsiong Tsai) (will probably be sued in separate action) (with Taiwan citizen ID A102054230), for a token price of RMB 30Millions (US$5million), with principals and under-table equities secretly distributed among corrupted government Kleptocrats.  Such illegal transfer of property ownership (under grand lease) regarding 19 Units was completed on November 3, 2003,  noticeably, Four hundred twenty two (422) days before the Intermediate People's Court rendered the Judgment which judicially confiscated these 19 Units real property.  The dark box operation to implement such a State assisted expropriation leading to corruptive sharing of such midnight sale colluded with unethical Taiwan merchant  was apparently being aided and abetted by Defendant Regional Branch of Chinese Communist Party of Guangxi Zhuang Autonomous Region, under the oversight of Defendant Central Commission of Politics and Law of Chinese Communist Party, Beijing, China.

40. First, the The People's Procuratorate of Guilin Citycriminally arrested Plaintiff Hepig Li, and the The Intermediate People's Court of Guilin Cityprovided false documents.

41. With the assistance of the Commercial Bank Guilin Branch, the property of Plaintiff Heping Li was transferred to the name of Cai Shouxiong and deceived by deception through the trust of Shanghai Real Estate Exchange. The entire transaction is a "black box" operation, and most of the transaction amount has been accomplished by the government of the People's republic of China through such judicially assisted state act by the Guilin Intermediate People's Courts (through judicial seizures and forfeiture),  prosecutors and others, all of which were totally corrupted.

42. The reason why The People's Procuratorate of Guilin Cityand The Intermediate People's Court of Guilin Citycan do this is that there is no legal awareness, no professional ethics It is also because there is a powerful terrorist powerhouse of totalitarian state behind the scenes. At that time, Luo Gan (now retired), being the Secretary of the Central Commission of Politics and Law, personally flew to Nanning, Guangxi in April 2003, and then the CCP Party Secretary of the Guangxi's Party Committee, Lu Bing (now retired), who was also Chairman of the Guangxi government, They met and worked out the plots. (Attached confidential documents of Guilin City)

43. On December 30, 2004, plaintiff, Heping Li, was sentenced to life imprisonment by the Guilin Intermediate Court.  The sentence was accompanied with a *post facto* restitution order retroactively declared that all his properties and assets would be confiscated, 13 months after they were "sold" "in the midnight between in-laws" in then in his darkness.  The Sentence verdict also involved an attached condition in depriving of his "political rights" for life time. plaintiff Heping Li refused to sign the verdict, vocally protesting the decision that his property should be confiscated.  Therefore, he appealed to the Regional (Provincial) High People's Court of Guangxi(abbreviation: Guangxi High Court). (With judgment 1)

44. On May 18, 2005, the High Court of Guangxi reversed the Judgment and Sentence remanded the case back to The Intermediate People's Court of Guilin Cityfor retrial, de novo.

45. On December 29, 2007, with overwhelming exculpatory evidence presented, The Intermediate People's Court of Guilin Cityre-judged: "The People's Procuratorate of Guilin Cityhas committed failure to provide this court with sufficient evidence that the defendant Heping Li's purchase of the house by using "embezzled"  public money, and prosecution cannot be confirmed.  The evidence in support of accusing Heping Li and  co-defendant Yanlan Huang in collusion to embezzle public funds is found insufficient.  Therefore, the evidence constituting the crime of corruption could not be established;  Charge for Tianying Deng   in having constituted harboring and transferring criminal proceeds and criminal properties be dismissed for insufficiency of evidence.  Heping Li was acquitted according to law and Tianying Deng  was acquitted according to law. " (With judgment 2)

46. Guilin Intermediate People's Procuratorate refused to accept the decision of acquittal and dismissal rendered by the The Intermediate People's Court of Guilin City upon remand and appealed.

47. On April 27, 2010, Guangxi Higher People's Court issued a final ruling ordering to : dismissed the protest and upheld the original innocence verdict (with the final ruling).

48. On October 16, 2012, Plaintiff Heping Li filed a state compensation to the Intermediate People's Court of Guilin City according to law, that is: Law imprisonment compensation for 1960 days of freedom of life, compensation for 19 Shanghai high-end apartments illegally confiscated, period of detention Compensation for injuries caused by torture in between (including forced labor of 12 to

16 hours per day).

49. The Intermediate People's Court of Guilin City only compensates plaintiff Heping Li for 1806 personal freedom due to wrong detention.  Calculated at RMB 125.43/day, and refused compensation for 145 days of illegal kidnapping and refused 19 illegally confiscated Shanghai apartments        Compensation, refusing to compensate for injuries caused by torture. (With compensation decision letter 1)

50. Plaintiff Heping Li continued to appeal to the Guangxi High Court, which made minor changes to the compensation of the Guilin Intermediate Court,  Adjusted to a daily compensation of 142.33 yuan, which is 257047.98 yuan (about 42,000.00 US dollars.) However, petition for return of 19 Shanghai apartments was refused, and compensation for injuries caused by torture was refused. (With compensation decision letter 2)

51. The Regional (Provincial) High People's Court of Guangxiput forward the following reasons for refusal: "Intermediate People's Court of Guilin City is not the body that made the decision to freeze, confiscate and confiscate property. In addition,  When the Intermediate People's Court of Guilin City heard the Heping Li case, the The People's Procuratorate of Guilin City did not freeze, detain and confiscate (Heping Li) The property was transferred to Intermediate People's Court of Guilin City . … Therefore, the Court does not support the applicant Heping Li for property compensation and the claims made. "

52. The more interesting part of the rejection letter is: "About the claimant Heping Li's treatment of his confiscated furniture, electronic equipment, heating equipment. The court's claim for compensation is not supported by this court because there is no evidence to prove that this loss was caused by the intermediate level of Guilin City.  Caused by the court's judicial activities. "

53. Augustine, the theologian and philosopher, said, "If there is no justice, what is the regime? It is just an organized bandits." In front of iron facts, the The Intermediate People's Court of Guilin Citycovered up, denied the facts, there is no justice in China.   All these is an organized bandits!

54. Plaintiff Heping Li, who was accused of conspiracy to embezzle RMB 30 million with plaintiff Yanlan Huang, was an allegation that was unexpected and false.  The 52 Shanghai properties purchased by plaintiff Heping Li were privately funded and earned from futures trading.  Public funds are legal private property.

55. Plaintiff Heping Li was found not guilty by Regional (Provincial) High People's Court of Guangxiand had legal effect, although he was illegally detained for 1806 days Symbolic compensation, but refused compensation for 145 days of kidnapping detention, refused compensation for 1960-day torture compensation, against Africa.  The 19 Shanghai apartments confiscated by law refused to compensate. These are the rights of plaintiff Heping Li, as a citizen, However, all the courts are inadmissible and refused compensation, the reason is still the manipulators behind the scenes, although, the original Political and Law Commission.   Secretary Luo Gan has retired, and Guangxi Party Secretary Lu Bing, chairman of the Guangxi government, has also retired. However, he was also in the Guangxi Party Shengkun Guo, who appointed the secretary, was later transferred to the Ministry of Public Security as the minister, and now he is also the secretary of the Central Political and Legal Committee. between us.   The conspiracy of the series has not been interrupted, and the interests of each other are closely connected.

56. Plaintiff Heping Li, 18 years of experience, seeking justice, seeking legal fairness, CPR under the one-party dictatorship of CCP.  This land is desperate. I hope to find justice in this great and free land of the United States level.

**Plaintiff Xiaogang Shi**

57. Plaintiff Xiaogang Shi is 65 years old US citizen and currently lives in 2036 Fort Davis Street, SE, Apt. A, Washington, DC 20020.

58. On February 26, 2000, Plaintiff Xiaogang Shi purchased 21 properties in the apartment from Plaintiff Hepig Li. They are situated respectively at: No. 1, Lane 748, Changshou Road, Shanghai City, No. 84, Lane 8988, Zhongchun Road, Shanghai, and No. 788 Hongxu Road, Shanghai City.

59. After the buyer and seller reached an agreement, and the three parties of the developer signed purchase agreement in change of title for full consideration.   Transaction was properly registered by the Shanghai Real Estate Exchange agency, all transactions are true and legal.

60. On December 19, 2002, the The People's Procuratorate of Guilin City seized and sealed Plaintiff Xiaogang Shi's 21 sets of apartments together his bank deposits and title documents.  Ms. Tianying Deng  acting as the agent of Plaintiff Xiaogang Shi, was arrested. The reason of Defendant The People's Procuratorate of Guilin City was the same as it accused plaintiff Heping Li and plaintiff Huang     Yanlan was suspected of jointly embezzling RMB 30 million and used it to purchase Shanghai property under the name of plaintiff Heping Li.

61. On April 27, 2010, after the final Judgment issued by Guilin Intermediate People's Court against Plaintiff Heping Li of life time sentence was vacated by the High Court of Guangxi and Heping Li was found not guilty, and the Regional (Provincial) High People's Court of Guangxi ruled in the final judgment in favor of all Plaintiffs in this instant case. Plaintiff Heping Li was acquitted and all legal and factual basis of the criminal accusations brought by the People's Procuratorate of Guilin City against Plaintiff Heping Li and all related innocent  victims including Plaintiff Yanlan Huang, and Xiaogang Shi was collapsed by the vacation and dismissal.  The catch-all accusation of shared "embezzlement" of RMB 30 million, that was said to be used to purchase all 51 units of properties in Shanghai under the name of plaintiff Heping Li was found to be Mr. Li's legitimate personal funds, his lawful income, period.  While the criminal accusation made by the People's Procuratorate of Guilin City against Plaintiff Heping Li was overturned by the Courts, the same accusation made by the People's Procuratorate of Guilin City against Plaintiff Xiaogang Shi and his agent Tianying Deng 's should have been eliminated altogether as well. Tianying Deng's criminal charge and her conviction and sentence for harboring and transferring criminal property were finally reversed, vacated and dismissed. All wronged criminal defendants received State Compensation.

62. At this time, Plaintiff Xiaogang Shi repeatedly asked a lawyer to apply to the The People's Procuratorate of Guilin City to return to him his wrongfully seized  bank deposit and to release his seized 21 units of Shanghai properties, ending up being all rejected. (These properties were all illegally listed for auction sale at this moment.) Plaintiff Xiaogang Shi also wrote a letter and sent it to the Beijing Supreme Procuratorate and filing his Grievance to the General Office of the Central Committee of the Chinese Communist Party（CCP）. All were in vain.

63. On December 7, 2016, with the support of the Central Commission of Politics and Law and in the corroboration of the CCP Party Branch Committee of Guangxi, a team of twenty some agents dispatched by the People's Procuratorate of Guilin City landed in Shanghai to proceed the seizure of Plaintiff Xiaogang Shi's ultra-valuable properties there.  Officials, suddenly from Guilin to Shanghai, without any legal process, just posted a notice to drive out all tenants under lease with Plaintiff Shi through his agents by intimidating these tenants. These agents from Guangxi ended up chasing all residents/occupants out from these 21 units.

64. The lawyer of Plaintiff Xiaogang Shi strongly protested to the People's Procuratorate of Guilin City. However, Director Tang of the People's Procuratorate of Guilin City so distorted:

"This is a case to be investigated by the central government. The order is handed down by the Summit authorities.  In any case, we will clear the site before the end of the 12th. Public security will be involved.  Any obstruction of law enforcement against the public security will assume all legal consequences." These twenty some agents dispatched from the People's Procuratorate of Guilin City were armed with guns and batons. Take the threat of "Central" and "Public Security" to  law enforcement.

65. On March 30, 2018, attorney Xiaogang Shi received a subpoena issued by the Guilin Intermediate People's Court, Guilin, May 10, 2018.

66. The Intermediate People's Court will hold a trial. The lawyer told Xiaogang Shi that the Chief Justice Zhang Liang threatened: "The confiscation of Xiaogang Shi's property is the central government instruction."

67. The demand has risen to the national level and is a political issue." Xiaogang Shi was extremely frightened by this, and lawyers were also frightened.  The lawyer felt that the result was known before the court. The lawyer advised Xiaogang Shi: "You should seek help from the US government as well! I am really weak, they are powerful."

68. On May 6, 2018, Plaintiff Xiaogang Shi was under the terrorist pressure of the CCP's dictatorship and under the threat of the president of the court Zhang Liang,  He completely collapsed, suffered a heart attack, suffered a cerebral thrombosis, and died, and was rushed to the hospital. After rescue. Although Xiaogang Shi saved his life, he was paralyzed, unable to walk, talk, eat, and completely disabled.   (See Figures 5, 6, and 7)

69. On October 15, 2018, the Intermediate People's Court of Guilin City abused the law and issued an illegal verdict, confiscating the properties of Plaintiff Xiaogang Shi.   They achieved such illegal expropriation of private property by force through summary legal proceedings. During the trial, the lawyer provided overwhelming chain of rebuttal exculpatory evidence to the court, a total of 83 pieces of evidence in his Defense.

70. Xiaogang Shi's property is not originated from illegal income, but legal private property. However, the The People's Procuratorate of Guilin City did not have any evidence in support of its forfeiture demand.

71. In order to prove that the property of Plaintiff Xiaogang Shi is from "illegal income", the People's Procuratorate of Guilin City launched the "Illegal Income Confiscation Procedure", which was

promulgated starting January 1, 2013, the new law implemented, according to judicial interpretation, is a special "Illegal income" procedure for "confiscation of properties from those yet to be convicted or hard to convict", that is to say, the state power house is empowered by the city legislature to take private property through summary procedures against whoever who is simply "suspected", including political prisoners, religious prisoners,  by the government for which confiscation for the sake of being suspicious only, by government discretionary on subjective prong alone.

72. The property of Plaintiff Xiaogang Shi is not illegal.   The income is his legally earned private funds. Because the The People's Procuratorate of Guilin City accused Heping Li and Yanlan Huang of conspiracy to embezzlement, the court has groundlessly construed Xiaogang Shi should be implicated and included.

73. The summary proceedings was long ended, and there was no public funds in the Shanghai property purchased by the plaintiff Heping Li, much less on XiaogangShi's part. What the court had ruled that Heping Li and Huang Yan Lan's conspiracy to commit corruption was thrown out by the High People's Court of Guangxi, the criminal case was dismissed after remand, and Heping Li was exonerated and was released from his serving life sentence. (Appendix: The Intermediate People's Court of Guilin CityConfiscation Judgment).

74. On March 12, 2019, all the properties of the plaintiff, US citizen Xiaogang Shi's were finally confiscated by the Guilin Intermediate Court. Xiaogang Shi and being placed for the listing of sale. (See the listing)  Plaintiff Xiaogang Shi filed a complaint with the Guangxi High Court, and it has been pending there.

75. The Chief Justice of the Supreme People's Court, Zhou Qiang, clearly affirmed the decision of the The Intermediate People's Court of Guilin City in his key note speech as the Supreme Court's work report to the National People's Congress.   He also praised Prosecutor Yang and sending his displeasure and threatening message to the High People's Court of Guangxi which twice reversed the criminal case against Heping Li, et al. (Attachment: Zhou Qiang's work report speech)

76. On June 29, 2019, under the direction of the Central Commission of Politics and Law, with the corroboration of  Guangxi Party Committee coordinated and cooperated, the dead criminal case was reopened in Guilin.

77.  The Chief Justice of the Supreme People's Court, Zhou Qiang, has not been judged first in the work report, and the Regional (Provincial) High People's Court of Guangxi does not need to reopen. The court, without any scruples, does not need to consider whether it is illegal or not, and in accordance with the requirements of the central leadership, it finally makes a shameful judgment:

78. To uphold the judgment of The Intermediate People's Court of Guilin City that the legal private property of US citizen Xiaogang Shi was confiscated. This is under the leadership of CCP and the Central Government under Premier Keqiang Li.  The law, the constitution is like a piece of scrap paper, and the power is greater than the law. Judges at all levels know the law and break the law. (With final review Receipt of ruling)

79. Plaintiff US citizen Xiaogang Shi was told that his 21 apartments and bank deposits in Shanghai, China totaling RMB 660,943.20, approximately US$100,000.00, were also illegally confiscated by

the Chinese government. Plaintiff Xiaogang Shi's hard work and hard work all his life has now evaporated under China's communist kleptocracy jungle rule.

80. The financial resources spent in the 18 years of lawsuits threatening him to be ended up in life time imprisonment under torturous conditions like Heping Li endured was nightmare every night looming over Plaintiff Shi every night even though he is in the safe haven of the United States, those have cumulatively trigeered his health crises. It resulted in his nerve breakdown and his life is now on the verge of death. All this is caused by the illegal and violent expropriation drive against an innocent U.S. citizen by the systematic corruption of the CCP regime. The CCP has more power than the law. For the sake of communist official kleptocrats' unlawful benefits, "law of Chinese characters" is used to legitimize state organized expropriation of provide properties for nothing.

81. Here, the plaintiff, US citizen Xiaogang Shi, requested the protection of US law to safeguard the rights and interests of US citizens.

Plaintiff Yanlan Huang

82. Plaintiff Yanlan Huang is a legal permanent resident of the United States currently living in 712 H Street NE, Apt. 1433, Washington, DC 20002.

82. First of all, let's introduce Plaintiff Yanlan Huang, who is the CCP regime who has tried every means to persecute. Although the plaintiff, Yanlan Huang, is not within the territory of China, he has not been spared from organized terrorist attacks in this country.

83. Plaintiff Yanlan Huang graduated from the Department of Mathematics, Guilin Normal University, Guangxi, and graduated with a master's degree in philosophy from Zhongshan University, Guangzhou. She once worked in the computing station of the Guilin Regional Statistics Bureau, the fourth census in China, she was responsible for the data processing in Guilin,

84. The leader managed the data processing of more than 30 people and 10 counties. Because of her outstanding performance, she was rated as the fourth national population. As an advanced worker in census data processing, the data processing group led by her won the second prize in the country. Therefore, she was promoted to be the deputy head of the computing station (deputy section level) and person in charge.

85. In March 1992, Plaintiff Yanlan Huang made a speech on Deng Xiaoping's southern tour, and the Chinese economy is in a good time for reform and opening up. Make a bold decision: give up government work, give up a fixed salary, and join the business industry.

86. Plaintiff Yanlan Huang, who started from scratch, founded Guilin Material Development Company (abbreviation: Development Company). Investment is a state-owned company. In 6 years, the company has grown from 4 people to more than 30 people.

87. Operating spot trading and futures trading, paying more than 10 million yuan in profits and taxes, paying more than 60 million yuan in bank interest, and donating vigorously to Children's Hope School chains where that primary schools in the underdeveloped areas, Plaintiff Yanlan Huang's business have repeatedly been rated as contract-abiding and trustworthy enterprises. Plaintiff

herself received numerous awards and owners, having been highly acclaimed in mass media.

88. In April 1998, plaintiff Yanlan Huang, following the request of the Chinese government, the business entity under the management of Plaintiff Huang was restructured, from a company of a listed state-owned company into privately owned corporation by stockholders.  Plaintiff Huang purchased 51% of the outstanding shares.  The rest 49% shares were owned by several shareholders. The company conducted financial audits, asset assessments, and the corporate acquisition was approved by the Guilin System Reform Commission and the State-owned Assets Administration.

89. That company, which was sold to Plaintiff Yanlan Huang by the government hired 30 employees. After acquisition, the company was renamed Guilin Yilan Development Co., Ltd. (abbreviation: Yilan), which is registered as a business and is a legal private enterprise. (Attached: according to Information on the industrial and commercial registration of the company's shares)

90. Under the leadership and support of the Central Political and Legal Committee, under the direct control of the Guangxi Party Committee and the Guangxi Government, the Guilin Municipal Law Enforcement, with the coordination of the Commission, the Guangxi Disciplinary Inspection Commission and the The People's Procuratorate of Guilin City directly operated under the local CCP committee began an organized violent attacks in guises of law enforcement action against Plaintiff Yanlan Huang, amid to illegally expropriating Plaintiff's lucrative corporate entity in booming business.

91. In April 2002, relator Hao Huang, brother of Plaintiff Yanlan Huang, was illegally arrested by Guilin City Procuratorate, shortly thereafter, he was placed under house arrest for 10 months.

92. In August 2002, Yanping Huang, the plaintiff's sister, was illegally arrested and detained by the The People's Procuratorate of Guilin Cityfor 381 days.

93. Yan Lan's first husband (plaintiff Heping Li) was illegally arrested and detained by the The People's Procuratorate of Guilin Cityfor 1960 days.

94. In December 2002, the plaintiff's mother Tianying Deng, was illegally arrested and detained by the The People's Procuratorate of Guilin Cityfor 554 days.

95. The family of plaintiff Yanlan Huang was suddenly and violently raided and persecuted by the Guilin City Procuratorate, especially her mother Tianying Deng, who was then almost 70-year-old. Plaintiff's sister Yanping Huang was then seriously ill in hospitalization and had just completed a surgical operation.  Guilin City People's Procuratorate based on fabricated allegation, put two old, weak and sick women, in different cities under arrest and detained under inhumane conditions.

96. Yanping's hands were handcuffed when she was put into a two nights long-distance train from Shanghai to Guilin, Guangxi. She was later tortured in jail.  Without inculpatory evidence, the Defendants illegally arrested innocent people, and secretly detained them in Nanning City, armed police took them into around the clock custody, without notifying their family members, nor allowing the family members to visit.  The authorities did not allow them to have defense lawyers.

97. Then, Ye Xiaojun,  a prosecutor from the People's Procuratorate of Guilin City  Officers of the military and Guangxi Discipline Inspection Commission surnamed defrauding witnesses forced

each of their relatives to sign prepared fraudulent testimony implicating Plaintiff Yanlan Huang as follows:

"I prove that the properties listed in Shanghai, which was bought by Heping Li, was actually bought by Yanlan Huang the real owner using her embezzled money." Under duress, all the witnesses were made to sign these fraudulent testimony which had been Framed by the People's Procuratorate of Guilin City.

98. In the event that when some of the Plaintiff's relatives, refused to sign, they were severely tortured. Ye Xiaojun, the lead prosecutor chocked Yanlan mother's neck and threatened: "If you don't sign, you won't be allowed to go home. No one can control you for ten or eight years."

99. Yang Kanbo, chief of the Linshi Procuratorate, threatened Plaintiff Huang's mother in custody, yelling: "You are going to be killed today, no one can control us here, we are the masters here. If you are dead here, there will be an explanation for the leaders.  Your family's affairs can't be done without dead meat left.  If you make a mistake, it will not be redemptive. " Prosecutor Yang Kanboalso said: "If this case is turned out to be wrong, we personally do not bear any responsibility, the superior leadership is responsible, and the loss is compensated by the state."

100.    Yang Kanbo also told Chen Muzhi, a friend of Plaintiff Yanlan Huang, "We will ruin Yanlan Huang's public image and completely  confiscate her company".

101.    Prosecutor Yang Kanbo, the head of the People's Procuratorate of Guilin City, uttered with threats see blood together with taking all assets from Plaintiff's Huang's buclear and extended family by citing his highest superior's directives, implicating the superior he mentioned was the secretary of the Central Commission of Politics and Law Luo Gan and Lu Bing, deputy secretary of the Guangxi Party Committee and chairman of the Guangxi provincial government, because the Central Commission of Politics and Law is the highest judicial authority in China.

102.    The highest State Power House (except the Politburo of the CCP), and the highest local government, the Guangxi Party Committee and Guangxi Government directly controlled the The Intermediate People's Court of Guilin Cityand Procuratorate. In particular, Lu Bing, who has also held the provincial governor's office, was in charge of the judicial department in Guangxi for more than ten years and has absolute power.

103.    In April 2003, Luo Gan, then Secretary of the Central Commission of Politics and Law, went to Nanning, Guangxi province, in conjunction with the Deputy Secretary of the Guangxi Party Committee in the name of field level inspections.  Governor Lu Bing, who was also the Chairman of the Guangxi government, conspired with Luo in plotting to Plaintiff Hepig Li's 19 private apartments in Shanghai's high-end apartments are not Chen Youhua; the nationalization of the property of the private enterprise Yilan Company illegally, of which Plaintiff Yanlan Huang holds 51% of the shares,  The value for 1998 was RMB 18,621,489.00, approximately US$ 2.66M. It is current market value is  is RMB 204,050,000.00, or USD 29,150,000.00.

104.    The vicious framing of plaintiff Yanlan Huang and the severe persecution of plaintiff Yanlan Huang's family led to a conspiracy to plunder property.  In order for Plaintiff Yanlan Huang to never be punished, the private property of Plaintiff Yanlan Huang and Plaintiff Heping Li was entered into.  In the pocket of every corrupt official, because illegal nationalization is only

superficial, in fact, they are corrupted by officials.

105.   Therefore, to Plaintiff Yanlan Huang, an international "red notice" was issued to prevent plaintiff Yanlan Huang from naturalizing in the United States, making the plaintiff
Yanlan Huang can never return to China. At the same time, you can also deceive the US government in an attempt to use diplomacy and other means to Sue  Yanlan Huang back to China and tortured to death.

106.   Plaintiff Yanlan Huang, firmly convinced of her innocence, has written complaints many times to expose the truth of the facts and the framed shady scene.  With the blessing of God, it can be delivered to the hands of the secretary of the Central Commission for Discipline Inspection, Wei Jianxing (deceased),

107.   It triggered great attention from the leaders of the Central Commission for Discipline Inspection. It was also because of the high concern of the Central Commission for Discipline Inspection that plaintiff Yanlan Huang's family with personal safety, plaintiff Heping Li was barely survived from torture.

108.   Since the accusation against all alleged "co-conspirators" as the group of Defendants of the same case, leading to her husband's life sentence prosecuted by the The People's Procuratorate of Guilin Cityhas been reversed and vacated by the Intermediate People's Court of Guilin after the Provincial Higher Court reversed and remanded the case, factual and evidential plaintiff Yanlan Huang was the "Red Notice" issued by China controlled Interpol should be revoked according to law. Because, continue to send "red notice" to plaintiff Yanlan Huang had no legal basis.     No longer has the factual basis, let alone the legal basis. However, the The People's Procuratorate of Guilin Cityrefused to withdraw and knew that the case by its entirety was illegal.*

109.   The The People's Procuratorate of Guilin Cityrefused to revoke the "red notice to plaintiff Yanlan Huang, there was a conspiracy to nationalize all the ultra-valuable properties for this targeted familt. The People's Procuratorate of Guilin Cityis an instrument to be manipulated by the Chinese Communist Party (CCP). The real player behind all these state-sponsored illegal nationalization of the private entrepreneurs' lawful enterprise, property and assets is: the Central Committee of Political and Legal Affairsand the Guangxi Provincial Party Committee.

---

*FBI Director Wray claims China running 'Fox Hunt' programme in US, calls Beijing 'greatest threat' to Washington He appealed to the China-born people in the United States to cFontact the FBI office if they are being contacted the Chinese officials to force them to return to China.  While speaking to the Hudson Institute in Washington, Wray said that the Chinese government's acts of counterintelligence and economic espionage pose the "greatest long-term threat" to the US' "information and intellectual property, and to our economic vitality". "It's a threat to our economic security--and by extension, to our national security," he said.  Timesnownews.com, 07/08/2020
Wray delivered a speech at the Hudson Institute, a Washington conservative think tank, on the topic of "How the FBI responds to China's impact on the United States." .  The Director Wray pointed out: The "Hunting Fox Project" targets Xi Jinping as a "threat" and a foreign political dissident and criticizes of China's human rights who criticizes violations, including hundreds of US citizens and green card holders. Id.

110.   The Central Committee of Political and Legal Affairsand the Guangxi Party Committee have

closely colluded and carefully planned to lobby the relevant summit central government include Defendant The State Council, to amend specific law narrowly tailoring to serve the purpose for plundering American citizen Xiaogang Shi's bank deposits and 21 units of ultra-expensive apartments in Shanghai, China. This is why these Defendants in this instant case kept refusing to revoke the Interpol "red notice" upon plaintiff Yanlan Huang.

111.    On January 1, 2013, PRC amended the law to be called "Special Confiscation Procedures for Illegal Income", which refers to the proceeds, properties as the fruits from corruption, bribery, "terrorist crimes" and other major criminal cases, where the criminal suspect or defendant absconds and cannot be reached after one year of arrest, or if the criminal suspect or defendant dies, the illegal income and other property involved in the case shall be recovered and seized in accordance with this regulation.

112.    The court may apply the new law to the properties for the confiscation of illegal gains, and the court shall go through judicial proceedings in accordance with the new law.

113.    On December 15, 2016, the The People's Procuratorate of Guilin Citycompletely violated the above regulations and applied to the The Intermediate People's Court of Guilin Cityfor confiscation. "Hundreds of Red Pass" Yanlan Huang's illegal income. Similarly, the Intermediate People's Court of Guilin City knowingly violates the law must also file a case and violate the law.

114.    Despite the acquittals and dismissals, followed with State Compensation Judgments for all these wronged victims-defendants, the Court still issued a Ruling to expropriate Plaintiff Xiaogang Shi's lawfully owned properties, say 21 Units of ultra-expensive apartments in the center of Shanghai, China regardless plaintiff Shi is a US citizen.

115.    The final judgment of the Guangxi Province High Court fully demonstrated that Plaintiff Yalan Huang and the plaintiff Heping Li were not corrupted, neither did they commit any criminal or ethical offense. The plaintiff Heping Li purchased those 19 Properties, which was unlawfully taken during his wrongful imprisonment.  The funds for all these properties situated in Shanghai that plaintiffs purchased have no public funds, are purchased with legally private funds, and thus became legally private property;  And the permanent destruction of the reproductive organs put him close to death.

116.    Having been victimized in such illegal expropriation campaign  are the following alleged "accomplices and co-conspirators":

**117.**    Victim (1 ): Heping Li, ex-husband of Plaintiff Yanlan Huang, who was wrongfully sentenced to life time imprisonment on December 30, 2004, merely because of his kinship to Plaintiff Yanlan Huang, actually be kept behind bars for 1960 days, brutally tortured and maltreated, yet barely survived.  Mr. Li's conviction and sentence was overturned and reversed by the Regional Higher People's Court and being rehabilitated.  More sufficient proof of all concerned Plaintiff's innocence is that all Yanlan Huang's care involved parties who were convicted and sentenced, were exonerated, with their convictions overturned, rehabilitated and having received State/National Compensation for being ripped off liberty.  Among these national compensations for wrongful

imprisonment, Plaintiff Heping Li received  State/National Compensation RMB 257047.98 (Approximately US$ 42,000.00 according to the exchange rate for the time period.) as for his 1806 days false imprisonment, calculating RMB143,33 (About US$23) per diem rate (Exhibit 8).

118.    Nevertheless, Plaintiff Heping Li's 19 Units of best located apartments in central area of Shanghai, whose then market value was approximately RMB 181,866,625.00 (approximately US$25,980,946.00), had been expropriated and put for "midnight sale among cousins" on  without Plaintiff's consent and authorization starting October 25, 2003, 422 days before the Court Order with final disposition of confiscating the property, followed with the reversal order by the same Court after the Higher Court's remand of the case.

119.    Victim (2 ): Plaintiff Xiaogang Shi, a U.S. citizen, former husband of Plaintiff Yanlan Huang. Mr. Shi was targeted and entrapped in this Chinese communist looting clique conspired scheme simply because he made capital investment in China and purchased 21 Units of ultra-expensive apartments in Shanghai, and he was Plaintiff Huang's husband then, and these facts were detected by the omnipotent dictatorship of proletariat.  Mr. Shi has narrowly escaped his doom of being prosecuted and convicted due to his U.S. citizenship.

Nevertheless, Plaintiff Xiaogang Shi's 21 Units were illegally confiscated and forcibly seized by the PRC government under the name of Guangxi Autonomous Government of Zhuangzu Ethnicity of China, under the direct oversight and total control of the Defendants, jointly or severally.   Together with such illegal expropriation of these 21 United illegally confiscated and forcibly seized, without public hearings, without compensation, without any damages assessment, and without any persuasive reason.  Together with these 21 apartments in the most expensive area of Shanghai, the Chinese government also took RMB RMB 660,943.20, approximately US$100,000.00,

from Plaintiff's in China bank accounts. The fair market value for Plaintiff's these illegally confiscated property is now RMB 215 million yuan, approximately US$30,714,285.00.

120.    Victim (3 ), Ms. Tianying Deng:  Ms. Deng is mother of Plaintiff Yanlan Huang, currently residing in China.  Ms. Deng was also illegally arrested, detained, tortured, indicted, prosecuted, and convicted in "Yalan Huang embezzlement" conspiracy for allegedly harboring Plaintiff Huang's"criminal proceeds". Consequently, she was sentenced to prison term of one year and 190 days, with the criminal fine of RMB 200,000.00, by Guiling City Intermediate People's Court  in January 2003.  During the proceedings, Ms. Deng's two units of real property in market value of RMB 20,000,000.00  were extra-judicially expropriated.

121.    On May 18, 2005, the High People's  Court of Guangxi affirmed her appeal and remanded her case to the intermediate trial court. On December 29, 2007, the trial court which had convicted and sentenced Ms. Deng reversed the conviction and sentence by new trial and pronounced Ms. Deng not guilty.   On October 16, 2012, the Region's High People's Court rendered a decision to award

Ms. Deng National Compensation RMB 78,850.82yuan (US$11,000) for her 554 days of wrongful imprisonment.  The expropriated property was not returned.

122.    Victim (4) , Yanping Huang, younger sister of Plaintiff Yanlan Huang,  was detained in detention center for 381 days without being indicted or prosecuted for alleged involvement in Yanlan Huang's expropriation case.    She was also awarded   by the Region's High People's Court for National Compensation of RMB47,788.83 (Approximately US$7,000.00).

123.    Victim (5): Yilan Development Co, Ltd. (hereinafter "Yilan") : A Multimillion dollar private business company formed in August 1998 under the auspices of Plaintiff Yanlan Huang, successfully engaging in such legitimate business operation as real property acquisition and management; future trading, commodity future trading, etc. with all approval from government agencies.   The corporate was solely owned by share holders. Plaintiff Yanlan Huang owns 51% corporate stocks, while all the company employees shared 49% stocks. Chinese government made zero penny capital investment, and owns zero penny company's assets.  With swift growth of the company assets in both appreciation of the real properties it lawfully acquired and returns in future trading, under the management of the Company's Board of Directors, of which, Plaintiff Huang was the Chair, the Company, in the end of 2002, Yilan's net assets, mostly in its equities from its sizable real properties scattered from South China to Northeast has reached more than RMB 18,621,489.00, approximately US$ 2.66M, the market value then for Plaintiff Yanlan Huang's 51% shares of outstanding stocks. It is current market value is  is RMB 204,050,000.00, or USD 29,150,000.00.

124.    In August 2002, Yilan Corporation, was seized and expropriated.  All its real property, together RMB 3million was confiscated, nationalized, and expropriated illegally by exercising totalitarian Kleptocracy jungle rule.  Rendering Plaintiff Yanlan Huang suffer to have her more than US$15Million be illegally ripped off without due process.  While the other unnamed shareholders as John Does and Mary Roes be ripped off the rest approximately RMB 100Millions, put together.

125.    On May 23, 2005, in order to "legitimize", *post facto*, Chinese government's illegal expropriation campaign, China's Guilin, Guangxi's Procuratorate issued a red warrant seeking for arrest of Plaintiff Yalan Huang.  Defendants conspirators  caused through Beijing authorities to have the International Criminal Police Organization (Interpol), once an infamous international police organization having involved in Nazi's "Final Solution", to have issued a red notice for up to 15 years.

126.    Additionally, Plaintiff Yanlan Huang's personal saving of RMB 92,000.00 (Approximately US$15,000.00) was also illegally seized and forfeited.

127.    November 15, 2018, Guilin Intermediate People's Court ruled, post facto,  that it pronounced to confiscated all assets and properties under the ownership of 100 individuals including Plaintiff Yanlan Huang, under the Interpol's red notice list as the product of Chinese police's manipulated by the Ministry of Public Security of the PRC.  Chinese government has imputed its own expropriation drive into international organization.

128.    With all these rehabilitations and state compensation judgments in place, Guilin Intermediate

People's prosecuting office refused to call off the Interpol's Red Notice against Plaintiff Yanlan Huang.

129.    Relentless efforts to seek for local remedy by petitioning for return and redemption of these illegally expropriated property has been exhausted.  On November 2, 2016, Plaintiff Heping Li appealed to the Supreme People's Court of China, praying for reinstatement and return of his 19 Units property in Yanlang Huang Expropriation case, the Supreme Court directed the Regional High Court to take appropriate action.  On December 6, 2016, the Reginional High Court reversed its own decision not to review the property restitution decision. In the meantime, the High Court also reversed the Intermediate Court's decision to dismiss Plaintiff's restitution petition, ordering the Intermediate People's Court of Guilin City of Guilin City to hear and adjudicate Plaintiff Heping Li's petition for redress about his property. (Exhibit 9)

130.    On April 21, 2017, in contemptuous disregard of these higher court's orders, the Intermediate Court, under the back up Defendant Shengkun Guo, abruptly ordered that all proceedings in reviewing redress of demised property be terminated.     This  incident followed with numerous other moves from Chinese government has demonstrated that all local remedies have been exhausted.  (Exhibit 10)

131.    Plaintiffs Mary Roes are those similarly situated unnamed victims who were also wrongfully arrested, detained, imprisoned, tortured with all their lawfully acquired, legitimately owned private property illegally expropriated under whatever excuses.  They were all afterwards exonerated and rehabilitated and compensated for their false imprisonment by token per diem compensation, together with Plaintiff Heping Li, ending up finding all their properties illegally taken without returned.

132.    Mary Roes have all rights and entitlement to take part in the instant litigation seeking for actual, consequential, and punitive damages against all defendants here.  Yet they have to stand-by this action or to have their IDs withheld until their concern of their personal safety and security disappear because they are currently physically in the People's Republic of China under totalitarian communist regime.  Once their safety concern is cleared, they will join in this legal action.


**Defendants**

Defendant Keqiang Li (For his official capacity only)

**133.**    Defendant Keqiang Li is the Premier of the State Council of China (PRC) which is located at 2

Fuyou Street, Xicheng District, Beijing, China 100017.

**134.** Defendant Keqiang Li, does not  personally involve in the conspiracy against Plaintiffs including tortures, false imprisonment and illegal expropriation of legitimate private properties by the other defendants in concert.  Defendant  Keqiang Li is sued merely for his official capacity as the head of the Central Government of the People's Republic of China (PRC).

**135.** All the crimes against humanity or violations of jus cogen was engaged under the leadership of the Central Government, say, State Council, of the People's Republic of China. Therefore, with either active control or reckless inaction, Defendant Keqiang Li, for his official capacity as the head of Chinese Central Government, should be held accountable and liable for all these wrongful misconducts.

Defendant Shengkun Guo

136.   Defendant Shengkun Guo, is the Secretary General of the Central Committee of Political and Legal Affairsof the Central Committee of the Chinese Communist Party (CCP).  Based upon the publicly accessible information and belief, Defendant Shengkun Guo's primary place of business is 14 Bei Chizi Street, Dongcheng District, Beijing, China, Zip code 100006.  Defendant Shengkun Guo was also the CCP's Politburo member.

137.   Chinese Communist Party (CCP) is the paramount power of the People's Republic of China according to the USDOS Annual Report on Human Rights Practice, page 1.  The CCP is one of the world's few remaining anti-humanity repressive ruling blocs.  The CCP is the world's only totalitarian regime which poses lethal strategic threats against the United States and its allies.

138.   The Central Committee of Political and Legal Affairsis the CCP's national top agency which directs, controls and oversees the following CCP arms of "law making" and law enforcement, ranging from the National People's Congress' legislation, to all Peope's Court Courts systems from the PRC's Supreme People's Court to local trial courts; People's Prosecuting Section ranging from the nation's supreme People's Prosecutorate to the county level prosecuting offices .  It is also the supreme boss overseeing, supervising and controlling the People's Public Security bureaus of all levels, ranging from the PRC's Ministry of Public Security  through to the field office of township's police precincts.  Moreover, the Committee also oversees the PRC's Department of Justice, Legal education and publicity; and the PRC's Lao Gai (Reform through coerced labor) and prison systems.

139.   Defendant Shengkun Guo, as the top Party Boss as the Secretary General of the Central Committee of Political and Legal Affairs takes full responsibility in his official capacity to the misconducts committed by his inferiors. Additionally  Mr. Guo was the Minister of the Ministry of the Public Security of the People's Republic of China before he takes the office the Committee's general secretary.

140.   The specific functions and powers of the Central Committee of Political and Legal Affairs are to guide courts, procuratorates, public security organs, national security organs, and agency of judicial administration, and to assist the CCP Central Committee and oversee the Organization Department to inspect and manage relevant leading cadres of the Central and local political and legal organs.

141.   In April 2003, LuoGan (retired), former secretary of the Central Political and Law Commission, went to Nanning, Guangxi to conspire the expropriation matters.  Lu Bing (retired), deputy

secretary of the CCP Party Branch Committee of Guangxi and Chairman of the Guangxi government, plots to nationalize the property of the private enterprise Yilan Corporation under the title of Plaintiff Yanlan Huang and the other minority shareholders.

142.  For the relevant part, such illegal expropriation plot involved the Illegal nationalization of Yilan Corporation  (which plaintiff Yanlan Huang holds 51% of the shares); illegally nationalized 19 apartments of plaintiff Li Heping's private property, etc.

143.  Defendant Guo Shengkun was deeply rooted in Guangxi Province (Region).  Guo served as deputy secretary of the Guangxi Provincial (Reginional)Party Committee and vice chairman of the Guangxi government from 2004 to 2007.

144.  From 2007 to 2012, Defendant Shengkun Guo served as the 1st secretary of the Guangxi Party Committee and the highest official of Guangxi (province).

145.  The defendant Shengkun Guo was promoted to the office of the Minister of Public Security, Secretary of the Party Committee, and Secretary of the Central Committee of Political and Legal Affairs from 2012 to 2017.

146.  Defendant Shengkun Guo, while serving as the 1st Secretary of the Guangxi Party Committee, personally went to Beijing to report to the Secretary of the Central Commission for Discipline Inspection He Guoqiang, with willful misrepresentation to defraud Mr. He, by frame-up against plaintiff  Yanlan Huang, whose purpose was to cover up the unjust, false and wrong cases manipulated by the CCP Party Branch of Guangxi Province (Region) to cover up the misconducts committed by the People's Procuratorate of Guilin City against the plaintiff Heping Li, Yanlan Huang and others.  Mr. Guo's meeting with Guoqiang He was apparently to escape his accountability by the Central Commission for Discipline Inspection.

147.  Defendant Shengkun Guo has personally involved in the underlying case by personally flying to Guangxi Regions of Zhuang Nationality to issue commands. Directions into this individual cases. Mr. Guo also supported and backed up Chief Justice Zhou Qiang's hardlining policy targeting these private entrepreneurs such as these Plaintiffs as continuing political persecution under the clueless "corruption and conspiracy" accusation in defamatory nature.  Mr. Zhou Qiang, suspiciously the son out of wedlock of the PRC's deceased Premier Zhou Enlai, is currently the Chief Justice of the People's Supreme Court, a notoriously infamous Communist hardliner and communist fundamentalist extremist.   Before Zhou was hand-picked by the CCP's Summit leadership to be the Chief Justice, he was the CCP's first Secretary for Hunan Province and single-handedly made up a conscience shocking capital punishment against a private entrepreneurs Zeng Renjie, who had helped many corrupted officials to become overnight novel rich profiteers including Zhou's family, in the West of Hunan Province and was sentenced to death, secretly executed, in order to make the victim's mouth shut forever, to prevent him leak such sensitive information about the corrupted provincial level officials including Zhou's family.

148.  The front running hitting squad in conspiracy, implementation and post facto "legitimization" of this expropriation is the Intermediate People's Procuratorate of Guiling City under the leadership and orchestration of the CCP's Central Committee of Political and Legal Affairs, of which Defendant Shengkun Guo is the ultimate boss on the top level.

149.   Under the orchestration direct control of the Central Committee, the Intermediate People's Procuratorate of Guiling City initiated the expropriation actions before approximate the rubber stamp intermediate People's Court rendered the final judgment retroactively pronounced the concerned properties, which had become zero then,  were judicially "confiscated".

150.   Though the Intermediate People's Procuratorate of Guiling City was playing the worst executioner's role, it was able to engage in such illegal expropriation against the Plaintiffs in implementation of communist jungle rule, because of Defendant Central Committee's leadership coverage.

151.   Consequently, Defendant Shengkun Guo, the Secretary General of the Committee should be held accountable and liable for such illegal expropriation.

152.   Moreover, the fact that Plaintiff Heping Li was ruthlessly and repeatedly tortured and inhumanly maltreated during his 1060 day and nights imprisonment by the police interrogators, prison guards, and police officers, in addition to expropriating his 19 Units ultra-expensive properties without legitimate reasons.

153.   All the level of police departments, ranging from ministerial level to the field precincts on township level, are all under the omnipotent power of the Central Committee.  Additionally, the prison and detention facilities under the PRC Department of Justice, are also under the oversight of the Central Committee, which Defendant Shengkun Guo was the supreme leader of the Committee. Therefore, Mr. Shengkun Guo should be held accountable and liable.

154.   In addition to Defendant's tortuous liability in his official capacity, Mr. Guo also personally went to Guangxi Autonomous Region to back up the provincial/regional CCP's leadership and Guangxi's  law enforcement agencies, to encourage and direct his inferiors  not to return or compensate the victims for their illegally  expropriated properties and assets.  Therefore, Defendant Guo is also personally responsible  for Plaintiff's harms and damages.

155.   Being the maximum leader in communist China's law enforcement, Defendant Shengkun Guo should also be held accountable, for his official capacity, for the police's blackmailing and distortion targeting Xiaogang Shi, against whom 21 Units were illegally expropriated,  leading to Plaintiff's Xiaogang Shi to collapse into near death paralyzed conditions.

156.   Being the maximum leader in communist China's law enforcement, Defendant Shengkun Guo should also held accountable, for his official capacity, for the police's blackmailing and distortion targeting Plaintiff Yanlan Huang and all her immediate relatives, tarnishing her reputation and public image as a "most wanted fugitive" under the Interpol's "Red Notice". In addition to expropriation her legitimate interests in Yilan Company.

**Defendant Xinshe Lu** (for his Official Capacity)

157.   Defendant Xinshe Lu is the Secretary of the CCP Branch Committee of Guangxi Province (Autonomous Region of Zhaung Ethnicity of Guangxi) and The Chair of the Government of Guangxi Zhuang Ethnicity Autonomous Region (Hereinafter "Guangxi").  Defendant Lu's primary place of business is situated at 103 Nationality Avenue,  Nanning City, Guangxi, China.

158.    Defendant Xinshe Lu is the highest CCP Party boss for Guangxi.

159.    While Chinese Communist Party is the paramount power of everything.  The CCP Branch of Guangxi Zhaung Ethnicity Autonomous Region of which Defendant Lu is the maximum boss for the Region takes oversight duties to control, coordinate and orchestrate the function, operation, and activities of the law enforcement (also legislature on the regional level).

160.    CCP Branch of Guangxi Zhaung Ethnicity Autonomous Region takes parallel oversight role in supervising and directing the law enforcement activities.

161.    The front running hitting squad in conspiracy, implementation and post facto "legitimization" of this expropriation is the Intermediate People's Procuratorate of Guiling City under the CCP's uniformed  leadership.  The CCP Branch of Guangxi Zhaung Ethnicity Autonomous Region, of which Defendant Lu is the top level boss, involved in orchestration of the CCP's Central Committee of Political and Legal Affairs as its local parallel player, now and then.

162.    With the involvement of orchestration and direct control of the matter being sued against now, the CCP Branch of Guangxi Zhaung Ethnicity Autonomous Region, of which Defendant Lu is the top level boss, takes parallel oversight duties directing, controlling and backing up Intermediate People's Procuratorate of Guiling City, which had initiated the expropriation actions before approximate the rubber stamp intermediate People's Court rendered the final judgment retroactively pronounced the concerned properties, which had become zero then,  were judicially "confiscated".

163.    Though the Intermediate People's Procuratorate of Guiling City was playing the worst executioner's role, that it was able to engage in such illegal expropriation against the Plaintiffs in implementation of communist jungle rule was partially because of the local CCP Party Boss' staunch support thereof.

164.    Consequently, Defendant Xinshe Lu, the Regional CCP Secretary General, should be held accountable and liable for such illegal expropriation and other tortuous offenses that mostly occurred in Guangxi.

**Defendant Yaojun Meng, for His Official Capacity**

**Chief Prosecutor of The Intermediate People's Procuratorate of Guiling City**

165.    Defendant Yaojun Meng is the chief of the Intermediate People's Procuratorate of Guiling City, Guangxi Autonomous Region of Zhuang Nationality.  Based upon the publicly accessible information and belief, Defendant Meng's primary place of business is 9 Xinyi Road, Guilin City, Guangxi Autonomous Region of Zhuang Nationality, China.

166.    Chinese Communist Party (CCP) is the paramount power of the People's Republic of China according to the USDOS Annual Report on Human Rights Practice, page 1.  The CCP is one of the world's few remaining anti-humanity repressive ruling blocs.  The CCP is the world's only totalitarian regime which poses lethal strategic threats against the United States and its allies.

167.    The Intermediate People's Procuratorate of Guiling City, of which Defendant Meng takes the active office of the Chief Prosecutor, is the claw of dictatorship of Proletariat of communist China. The Intermediate People's Procuratorate of Guiling City is acting under the parallel oversight of the Central Committee of Political and Legal Affairsof which Defendant Shengkun Guo is the top leader; and the CCP Regional Branch, of which, Defendant Xinshe Lu is the first Secretary, the maximum Party boss for the Region,

168.    Defendant Yaojun Meng, in his official capacity, should be held accountable and liable for all the miserable sufferings involving illegal expropriations, false arrest, false imprisonment, tortures, distortions causing or contributing to one of the Plaintiffs acute and severe life-threatening medical consequences, by relentless, wild and ultra-aggressive illegal conspiracy driven by the Intermediate People's Procuratorate of Guiling City, of which Defendant Meng takes office as of its chief.

169.    The Intermediate People's Procuratorate of Guiling City of which Defendant Meng is the Chief Prosecutor has taken, and still is taking, the role as the frontal line hitting squad to have committed all the tortuous wrongs and enormous harms and damages, in conspiracy with the other named and unnamed Defendants,  against all Plaintiffs.

170.    Intermediate People's Procuratorate of Guiling City whose Chief Prosecutor is Defendant Yaojun Meng is the mastermind, architect, front running hitting squad, in conspiracy with  the Central Committee of Political and Legal Affairsof which Defendant Gan Luo was then the top leader; and the CCP Regional Branch, of which, one of the unnamed Defendants Bin Lu, formerly Deputy Secretary of the CCP Branch as well as retire Regional Chair,  currently listed as unnamed one Defendant Robert Doe, initiated the chain of wrongful prosecutions for the ulterior motive of illegal expropriation in taking private entrepreneurs' private property.

171.    Such a conspiracy started shortly after these Plaintiffs legally acquired sizable real properties in Shanghai, Guilin, Shenyang, and Fujian in the end of 2001.  The properties lawfully belonging to these Plaintiff in person or Plaintiff owned company involves 155 acres of land in Guilin, Guangxi, 1 Office building in Guilin's commercial area; 200,000 Sq. ft commercial store property in Shenyang City; and 52 Units of the ultra-expensive residential apartments in the heartland of Shanghai City, the nation's most expensive land mass, with swift value appreciation, approximately more than RMB One Billion Yuan, equalizing to US$150Millions for the recent market value. It is the Intermediate People's Procuratorate of Guiling City under the control of Defendant Luo Gan, and Defendant Robert Doe, i.e., Deputy CCP regional Secretary and regional Chair, Lu Bin, initiated a frivolous and clueless criminal prosecution without initiation of criminal investigation from the public security authority, against Plaintiff Heping Li starting August 2002.

172.   The ungrounded allegation in support of the Intermediate People's Procuratorate to steal and convert Plaintiff's property was so-called RMB30,025,000.00 purchase money buying these 52 units of real property, among others,  was what Plaintiff Yanlan Huang allegedly embezzled money from the the Accounts of the predecessor of Yilan Development Group Company Ltd., prior to 1998 when the predecessor company was privatized and legally converted into the capital investor as the shareholders.

173.   Intermediate People's Procuratorate of Guiling City whose Chief Prosecutor is Defendant Yaojun Meng first launched such a malicious prosecution targeting Plaintiff Heping Li seeking for capital punishment under the theory that the property purchasing was the criminal fruits in conspiracy between then Defendant  Heping Li, co-Defendant Tianying Deng, and Plaintiff Yanlan Huang who was abroad, starting August 2002, while knowing the charge was frivolous seeing overwhelming exculpatory evidence that the RMB32,002,500.00 was drafted from Plaintiff Heping Li's private Fang Zheng  Company legally transacting stock exchanges and future trading, with clear and neat accounting and auditing records shows that the Company's capital investment as the seed money ab initio was completely detached from the treasury of Yilan Company or the pocket of Plaintiff Yanlan Huang.  Such a judicial finding of critical fact had later become evidentiary support to overturn Mr. Heping Li's life sentence judgment, leading to total collapse of Heping Li-Yanlan Huang-Xiaogang Shi-Tianying Deng criminal conspiracy charge.

174.   With an wild and ultra-aggressive prosecution seeking for capital punishment against Mr. Heping Li,    Intermediate People's Procuratorate of Guiling City whose Chief Prosecutor is Defendant  Yaojun Meng, achieved its anticipated results from the Intermediate People's Court of Guilin City: Life Sentence, together with disenfranchising political rights for the life time, and confiscation and forfeiture of all personal properties, on December 30, 2004.

175.   Surprising matters occurred that more than one year before the Court's final Judgment, the Intermediate People's Procuratorate of Guiling City whose Chief Prosecutor is Defendant  Yaojun Meng, had rushed to its real target, the ultra-valuable Properties under the lawful ownership, titles and possessions of Plaintiffs, particularly, Plaintiff Heping Li, placed it for midnight, among cousins' "auction" through Shanghai International Auction Company and Shanghai Shen Gang Aution House.  Consequently, Mr. Heping Li's 19 Units of ultra expensive apartments were sold to Mr. Hsieu Hsiong Tsai, a equally greedy and corrupted pro-communist Taiwanese merchant, on November 2, 2003, for token price of RMB30,000,000.00, approximately one 5th of the market value at the time, much less in comparison to today's market value.

176.   On December 19, 2002, the defendant People's Procuratorate of Guilin City acting under the

instruction of the Central Committee of Political and Legal Affairs under Luo Gan,  and the Guangxi Party Committee together with Guangxi Government, dispatched a hitting squard to Shanghai City, thousands miles away,  led by Ye Xiaojun, from the Procuratorate of Guilin City. to seal and seize plaintiff  Xiaogang Shi's 21 Units of Properties in Shanghai.

177.   The defendant People's Procuratorate of Guilin City illegally kidnapped the plaintiff Li Heping secretly and also illegally kidnapped the plaintiff Yanping Huang, Plaintiff  Yanlan Huang's sister, and Tianying Deng, Plaintiff Huang's mother.

178.   All those victims who were taken into hostages by People's Procurator of Guilin City refused to sign written confession prepared for them implicating Plaintiff's Yanlan Huang's alleged "embezzlement" and fraudulent charges that the money used to purchase all 52 units of Shanghai Properties was originated from Plaintiff's "embezzlement" proceeds.  All of them were ruthlessly tortured because of their refusal to cooperate with the authorities.

179.   On February 11, 2003, the defendant Guilin City Procuratorate, after illegal kidnapping, without any evidence, prosecuted the original indicted and prosecuted Plaintiff Heping Li for alleged "colluding with Yanlan Huang to embezzle RMB 30 million and purchase the  properties using the stolen proceeds of RMB 30 million.

180.   Plaintiff Huang Yanlan came to the United States in 1999 and became a permanent resident of the United States. Although she was narrowly spared from being kidnapped and torture, but her 51%-owned Chinese company (i.e, Ylang Company) was illegally confiscated. The defendant, Guilin City Procuratorate, used terrorist and violent means to illegally expropriate the property of Yilan Company, as follows:

 (1) The office building of Yilan Company, with an area of 1129.47 square meters and a value of RMB 5,568,287.
 (2) Shenyang Commercial Building, area: 2091 square meters, value: RMB 23,000,000.
 (3) Fujian Quanzhou residential building, area: 2424.76 square meters, value: RMB 7,944,437.
 (4) Total value: RMB 36,512,724 (evaluated price in 1998).

181.   Plaintiff Huang Yanlan accounted for 51% of the original value of the shares: RMB 18,621,489 (US$2.66 million) (evaluated price in 1998).  Plaintiff Huang Yanlan accounted for 51% of the present value of the shares: RMB 31,655,000 (US$45.22 million) (according to China's 2019 GDP Growth rate calculation).

182.   Defendant People's Procuratorate of Guilin City used terrorist violence to completely destroy the Guilin Yilan Company, which was held by the plaintiff Huang Yanlan.

183.     All property was illegally nationalized and illegally expropriated. And through the National Criminal Police Organization, the plaintiff  Yanlan Huang was issued a "Red Notice by Interpol.

184.   What were the revenue from such midnight auction sale distributed among such un-named potential defendants as Comrade Lu Bin, then the Party and Government boss for Guangxi Region and the Red Caped Taiwan opportunist "merchant" Hsieu Hsiong Tsai,  all Defendants and/or their predecessors or co-conspirators may remain secret forever.  The traceable fact is that even if these ultra-valuable properties were sold in the midnight by the Intermediate People's Procuratorate of

Guiling City in November 2003, after Mr. Heping Li had all his criminal conviction and criminal forfeiture overturned .  After Mr. Li received rehabilitation, being judicially declared innocent and received National Compensation for 1960 days behind bars, , not only his property become untraceable, but also the token revenue from such a high profile same becomes clueless.

185.    On December 30, 2004, the Intermediate People's Court retroactively ruled that all properties, including his 19 Units  of ultra-expensive properties,  of Mr. Heping Li's be confiscated. Such a post-dated judgment of confiscation would confiscate Mr. Li's properties which had long been illegally taken by the Intermediate People's Procuratorate of Guiling City as earlier as November 2003.

186.    The front running hitting squad in conspiracy, implementation and post facto "legitimization" of this expropriation is the Intermediate People's Procuratorate of Guiling City, of which Defendant Yaojun Meng is momentarily its Chief,  under the leadership and orchestration of the CCP's Central Committee of Political and Legal Affairs, of which Defendant Shengkun Guo is the ultimate boss on the top level.

187.    Under the orchestration direct control of the Central Committee, the Intermediate People's Procuratorate of Guiling City, of which Defendant Yaojun Meng is its Chief,  initiated the expropriation actions before approximate the rubber stamp intermediate People's Court rendered the final judgment retroactively pronounced the concerned properties, which had become zero then, were judicially "confiscated".

188.    Though the Intermediate People's Procuratorate of Guiling City, of which Defendant Yaojun Meng is its Chief,  was playing the worst executioner's role, it was able to engage in such illegal expropriation against the Plaintiffs in implementation of communist jungle rule, because of Defendant Central Committee's leadership coverage.

189.    Moreover, the fact that Plaintiff Heping Li was ruthlessly and repeatedly tortured and inhumanly maltreated during his 1060 day and nights imprisonment by the police interrogators, prison guards, and police officers, in addition to expropriating his 19 Units ultra-expensive properties without legitimate reasons was first initiated by the Intermediate People's Procuratorate of Guiling City, of which Defendant Yaojun Meng is its Chief..

190.    After numerous rehabilitation measures taken as Plaintiff Heping Li's relentless efforts to petition for redress, on September 1, 2017, the High People's Court of Guangxi Autonomous Region of Zhuang Nationality  issued the following retrial Decision, which is highly reflective to address the scandalous absurdity of the Procuratorate of Guiling City:  Retrial Decision (2017) Guilin Criminal Trial:  "The Intermediate People's Procuratorate of Guiling City charged Defendant

Heping Li for the offense of Embezzlement, Defendant Tianying Deng for the offense of harboring and concealment of embezzled properties.  The Intermediate People's Court of Guilin City rendered 2003-133 criminal judgment on December 30, 2004 with the following:

191.    Defendant Heping Li was found guilty of embezzlement and be sentenced into Life will all political rights disfranchised; and all his personal properties confiscated and forfeited;

192.    Defendant Tianying Deng is found guilty of harboring and converting embezzled properties and sentenced into prison term of one year and 190 days, with criminal penalty of RMB 200,000.00 Yuan ;

193.    These Defendants' Real properties, house purchasing money, passenger Minibus DX6411, being purchased using the embezzled funds of RMB30,063,500.00yuans shall be confiscated and forfeited. These two defendants did not obey the judgment, they appealed .  This Court adjudicated the appeal and rendered (2005)  009 Criminal Decision on May 18, 2005, holding the criminal judgment by the lower court was found to be ambiguous in the factual findings, this Court remanded the case to the Intermediate People's Court of Guiling City for retrial. Upon remanding, the Intermediate People's Court of Guiling City organized a de novo trial panel which rendered Criminal Trial 91 Judgment, pronouncing Defendant Heping Li and Tianying Deng innocent. Thereafter, the Intermediate People's Procuratorate of Guiling City filed an appeal to that Judgment by de novo trial panel.  The High People's Procuratorate of Guangxi Autonomous Region of Zhuang Nationality supported the Appeal. This Court rendered (2008) Guilin Criminal Final Number 7 Criminal Judgment which dismissed the government's Appeal, having affirmed this Court's Judgment. The above Judgment has already  been legally effectuated and binding….

194.    The High People's Court of Guangxi Autonomous Region of Zhuang Nationality (Retrogressed and engraved with the Court's Official seal) Exhibit 12

195.    The above-cited retrial Judgment rendered by the High People's Court is self-evident and self-explanatory.  In addition to the High Court's overturning of the conviction and sentence against Heping Li and Tianying Deng, the Regional High Court also awarded state compensation to both Heping Li and Tianying Deng.  With all these judicially rendered exculpatory evidence in place, Defendant Intermediate People's Procuratorate of Guiling City knew or should have known that the previous, current, and future prosecution against these Plaintiff was baseless and clueless, hence frivolous.  Yet it has carried out prosecutions after prosecutions in conspiracy with the other named and unnamed defendants for the following pragmatic concerns:

A. To cleanse its stained hands by legitimizing its involvement as the hitting squad in jointly and

severally committing such wrongs as illegal expropriations, coupled with such other offenses as of tortures, through malicious prosecution in conspiracy with other defendants;

B.  Further its crimes in completing an unfinished illegal expropriation by expanding its claws into the zone of the last lot: Plaintiff Xiaogang Shi's remaining 21 Units of ultraexpensive properties in Shanghai, China.

196.   Worst of all, the Intermediate People's Procuratorate of Guiling City whose Chief Prosecutor is Defendant Yaojun Meng, in conspiracy with the Central Committee of Political and Legal Affairs of which Defendant Shengkun Guo is the top leader; and the CCP Regional Branch, of which, Defendant Xinshe Lu is the first Secretary, the maximum Party boss, boldly, reopened on November 15, 2018 in its criminal forfeiture verdict, the collapsed "criminal prosecution" continuing its witch-hunting based upon the housing purchasing money "30 Million" "embezzled" funds, which was twice denied by the Higher People's Court of the Region to legitimizing its renewed greed and ambition to encircle and devour the remaining 21 Units of Property in intact under the lawful ownership of Plaintiff Xiaogang Shi, regardless the Region's high court's reversals twice in place.

197.   As of this date, in conspiracy with all other named Defendants and unnamend Defendants John Does, Intermediate People's Procuratorate of Guiling City, of which Defendant Yaojun Meng is its chief prosecutor, has been deeply involved in all conspiracy to expropriate U.S. citizen Xiaogang Shi's 21 Units private properties.

198.   The Intermediate People's Procuratorate of Guiling City of which Defendant Yaojun Meng is its chief prosecutor must held accountable and liable for all harms and damages he has caused against all the Plaintiffs, and such liability cannot be waived for this defendant's excuse of "obeying the order" of the other superior defendants according to Nuremberg rule.

**Defendant Industrial Commercial Bank of China**

199.   Defendant Industrial Commercial Bank of China (herein after "ICBC") is China's State owned financial institution, a multinational nationals that has branch institution all over the world, including the United States.  ICBC's U.S, operation headquarters  is as follows:  Industrial Commercial Bank of China t/a ICBC U.S. Branch Headquarters, aka. ICBC Financial Services LLC.

200.   The principal place for business for Industrial Commercial Bank of China aka ICBC Financial Services LLC.  is located at 202 Canal Street,  New York, NY 10013.

201.   Defendant ICBC, acting under the directives from the directives of the Political and Legal Committee, played pivot role in the conspiracy designed and devised to illegally expropriate Plaintiff's properties.

202.   This Defendant, as the integral part of the Defendants' shared state powerhouse under the Chinese Communist Party's total control and manipulation,  is the opportunistic principal recipient, ultimate beneficiary and functional operator in the said illegal expropriation of Plaintiffs' properties and assets.

203.    As a multinational financial institution directly owned by the government of People's Republic of China whose revenue is directly inflowing into the national treasurer under the total control of Chinese Communist Party (CCP), the paramount source of the power, all ICBC branches, in and out of China, is an integral part of ICBC.   Therefore, they are all in and abroad, are an one.  It is one institution, and one pocket.

204.    Defendant ICBC  has actively involved in the conspiracy of illegal expropriation against all plaintiff's in inclusion with all other Defendants, from the beginning through to the end, allowing it to be a voluntary instrumentation in the violent, and unlawful expropriation against Plaintiffs. Additionally, the ICBC is the primary ultimate recipient, beneficiary, distributor, laundering machine, on behalf of all named and unnamed defendants-coconspirators in this scheme of illegitimate, savage nationalization drive under the sheer disguise of law enforcement.

205.    On October 26, 2003, Defendant ICBC Guilin Branch Office, together with another John Doe, the Industrial and Commerce Bank of China, Guilin Branch, apparently under the auspices and orchestration of all other named and unnamed Defendants, initiated an illegal midnight auction to sell Heping Li's 19 Units Properties located in Shanghai to their communist cousin Mr. Hsieu Hsiong Tsai, a red caped corrupted merchant from Taiwan for disproportionately low price of RMB 30.0076million, approximately a quarter in comparison to then fair market value.  Nationals of Republic of China (ROC) in Taiwan, yet having converted their allegiance to the People's Republic under totalitarian regime of the Mainland, has apparently committed treason against ROC in exchange corrupted economic benefits for the dirty reward of their collusion with the corrupted Communist regime they knew or should have known to be anti-humanity.   Such an illegal transaction was completed  on November 25, 2003.

206.    In order to accomplish such illegal expropriation, Defendant ICBC pretended to have filed a petition with Defendant Intermediate People's Procuratorate of Guiling City and the intermediate People's Court of Guilin, petitioning to act as the judicially appointed receiver of plaintiffs' "tainted" properties, apparently a lucrative deal for all these corrupted participants of the game.

207.    Defendant's petition ended up being retroactively granted by the Intermediate People's Court of Guiling 12/11/2003, approximately one month after the property had already been sold for a quarter of then market value to their puppet, a red caped Taiwanese merchant, as the looters white scarves and laundering machine.

208.    It was not until December 30, 2004 the entire fake judicial proceeding targeting Plaintiff Heping Li was completed in retroactively legitimizing such poorly staged expropriation of private properties by state organized violence, in which Defendant ICBC has played the role of voluntary

instrumentation as a financial institution.  Returning to December 30, 2004, approximately 14 months after his lawfully owned private property was illegally expropriated,  the Intermediate People's Court of Guilin City rendered judgment declaring that Heping Li's 19 Units of property, under his name would be "confiscated" as a criminal penalty disposition together with his life sentence handed down as part of his final disposition of the criminal prosecution.  That criminal judgment was overturned in 2005, The reversal was reaffirmed in 2008 and 2017.

209.    Defendant ICBC, by itself as well as via its U.S. institutional establishment as its integral part, must be held accountable and liable for all harms and damages that have been caused against all Plaintiffs for the illegal expropriation part, and such liability cannot be waived for this defendant's excuse of "obeying the order" of the other superior defendants according to Nuremberg rule.

**Defendants John Does**

210.    Defendants John Does, all male sex or unisex as institutions, are the functional participants in these conspiracies resulting in illegal expropriations, tortures, cruel and inhuman  treatment, slave labors,   distortions causing plaintiff Xiaogang Shi's severe medical consequences, defamation campaigns, etc.

211.    These John Does including John Doe number 1, potential Defendant Lu Bin, former acting Secretary of the CCP Branch of  Guangxi Autonomous Region of Zhuang Nationality, a thoroughly corrupted party boss who was the most evil initiator and then master minder triggering the chain of all these episodes in collusion with Defendant Luo Gan, merely for his greed and avarice.  Late Mr. Lu Bin, the architect and master minder of all these disasters,  should have been named as the Defendant number one but for his said to be dead in Communist jail for corruption charge and become otherwise traceless;

212.    John Doe number 2: Zhou Qiang, allegedly one of secret heirs of the deceased totalitarian chieftain Zhou Enlai, out of wedlock, like all is similarly situated siblings, is currently so-called the Chief "Justice" of the Supreme People's Court of the "PRC".  Mr. Zhou, in collusion with all these named or unnamed Defendants of "Does", has persistently involved in this case by personally and emotionally involved.   Mr. Zhou should have been held accountable and liable for all the disastrous consequences of this expropriation case.  Nevertheless, his official position as being hand-picked by the CCP's summit ruling bloc as of the PRC's Chief Justice would definitely render the processing of this instant case extremely thorny and difficult.  Therefore, Plaintiff has to quit him from the named defendants list;

213.    John Doe number 3: The Intermediate People's Court of Guilin. Being the judicial institution, this Doe has committed a chain of grave wrongs by allowing it to be a voluntary or involuntary

instrument being handled by late Mr. Lu Bin and being manipulated by the second worst player the Intermediate People's Procuratorate of Guiling City, of which Defendant Yaojun Meng is its chief prosecutor.  Plaintiffs decided not to name this Doe for the same reason as stated about Doe number 2.

214.    John Doe number 4.  Hsieu Hsiong Tsai, a willing and voluntary accomplice as of the real players' white scarf, the illegal recipient of the victims' ultra valuable properties sold to him in apparently a "midnight auction",  an unethical merchant from Taiwan, who is excluded from the named Defendants list at this moment for the same reason as for Doe number 1. should have been named as the Defendant number 2 but for his said to be deceased and/or become otherwise traceless.

215.    John Doe Number 5; All terrorist attackers, uniformed or plain clothed street thugs, bouncers, police interrogators, wards, prison guards, medical personnel in prison facilities, commercial auctioneers, bankers and financiers involved in such illegal expropriations and tortures, who are accountable but their liability was carried by their masters as the Defendants here under the theory of *"respondeat superior"*.

## JURISDICTION AND VENUE

216.    This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 (federal question jurisdiction), 28 USC 1605 (a) (3) (4) (5) and (Expropriation of property in violation of law of nations) and 1605A(h) (2 ) as well as 28 USC 1605 (8), for enforcement purpose.

28 U.S.C. § 1350 (Alien Tort Claims Statute) and 28 U.S.C. § 1350 (Torture Victim Protection Act).

The Alien Tort Statute provides federal jurisdiction for "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The

Torture Victim Protection Act supplements and confirms the ATS by providing federal court jurisdiction for acts of torture, as defined by 28 U.S.C. § 1350.

217.    This Court may exercise "original jurisdiction" over a foreign state "without regard to amount in controversy" in "nonjury civil action[s]" seeking "relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." 28 U.S.C. § 1330(a). As the plaintiffs have not demanded a jury trial, see Civil Cover Sheet at 2, ECF No. 1-1, and they seek in personam relief, see Compl. at 21, the remaining question is whether North Korea is entitled to immunity under the FSIA or another international agreement.

218.    28 U.S.C. § 1605A, which provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture,

extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act . . . ," 28 U.S.C. § 1605A(a)(1). Subject matter jurisdiction under this terrorism exception may be exercised when the plaintiff establishes the following four elements: (1) "the foreign state was designated as a state sponsor of terrorism at the time [of] the act . . . or was so designated as a result of such act, and . . . remains so designated when the claim is filed," id. § 1605A(a)(2)(A)(i)(I); (2) "the claimant or the victim was, at the time [of] the act . . . a national of the United States," id. § 1605A(a)(2)(A)(ii); (3) "in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim," id. § 1605A(a)(2)(A)(iii); and (4) the plaintiff seeks monetary damages "for personal injury or death caused by 'torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act,' if 'engaged in by an official, employee, or agent' of a foreign country," Mohammadi, 782 F.3d at 14 (quoting 28 U.S.C. § 1605A(a)(1)).

219.    Plaintiffs who are seeking damages under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, et seq., against North Korea for its torture, hostage taking, and extrajudicial killing of Otto. 28 U.S.C. § 1608(e). "This provides foreign sovereigns a special protection akin to that assured the federal government by FED. R. CIV. P. 55(e)," which has been renumbered by the 2007 amendment to Rule 55(d). Jerez v. Republic of Cuba, 775 F.3d 419, 423 (D.C. Cir. 2014); see also H.R. REP. No. 94-1487, at 26 (1976) (stating that § 1608(e) establishes "the same requirement applicable to default judgments against the U.S. Government under rule 55(e), F.R. Civ. P."). While the "FSIA leaves it to the court to determine precisely how much and what kinds of evidence the plaintiff must provide, requiring only that it be 'satisfactory to the court,'" courts must be mindful that Congress enacted Section 1605A, FSIA's terrorism exception, and Section 1608(e) with the "aim[] to prevent state sponsors of terrorism—entities particularly unlikely to submit to this country's laws—from escaping liability for their sins." Han Kim v. Democratic People's Republic of Korea, 774 F.3d 1044, 1047–48 (D.C. Cir. 2014) (quoting 28 U.S.C. § 1608(e)). With this objective in mind, the D.C. Circuit has instructed that "courts have the authority—indeed, we think, the obligation—to 'adjust evidentiary requirements to . . . differing situations.'" Id. at 1048 (quoting Bundy v. Jackson, 641 F.2d 934, 951 (D.C. Cir. 1981)) (alteration adopted). Courts must draw their "findings of fact and conclusions of law from admissible testimony in accordance with the Federal Rules of Evidence." Id. at 1049 (quoting Daliberti v. Republic of Iraq, 146 F. Supp. 2d 19, 21 n.1 (D.D.C. 2001)). Uncontroverted factual allegations that are supported by admissible evidence are taken as true. Roth v. Islamic Republic of Iran, 78 F. Supp. 3d 379, 386 (D.D.C. 2015)

("Courts may rely on uncontroverted factual allegations that are supported by affidavits." (citing Rimkus v. Islamic Republic of Iran, 750 F. Supp. 2d 163, 171 (D.D.C. 2010))); Gates v. Syrian Arab Republic, 580 F. Supp. 2d 53, 63 (D.D.C. 2008), aff'd, 646 F.3d 1 (D.C. Cir. 2011) (quoting Estate of Botvin v. Islamic Republic of Iran, 510 F. Supp. 2d 101, 103 (D.D.C. 2007)); accord FED. R. CIV. P. 56(e)(2) (authorizing court to "consider the fact undisputed for purposes of the motion" when adverse party "fails to properly address another party's assertion of fact"). Section 1608(e), thus, "does not require a court to step into the shoes of the defaulting party and pursue every possible evidentiary challenge." Owens v. Republic of Sudan, 864 F.3d 751, 785 (D.C. Cir. 2017). "This is part of the risk a sovereign runs when it does not appear and alert the court to evidentiary problems." Id. at 786. In a FSIA default proceeding, a district court can find that the evidence presented is satisfactory "when the plaintiff shows 'her claim has some factual basis,'. . . even if she might not have prevailed in a contested proceeding." Id. at 785 (citations omitted). "This lenient standard is particularly appropriate for a FSIA terrorism case, for which firsthand evidence and eyewitness testimony is difficult or impossible to obtain from an absent and likely hostile sovereign." Id. Thus, courts are accorded "an unusual degree of discretion over evidentiary rulings in a FSIA case against a defaulting state sponsor of terrorism." Id. This "broad discretion extends to the admission of expert testimony, which, even in the ordinary case, 'does not constitute an abuse of discretion merely because the factual bases for an expert's opinion are weak.'" Id. (quoting Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 567 (D.C. Cir. 1993)). Indeed, "[t]he testimony of expert witnesses is of crucial importance in terrorism cases . . . because firsthand evidence of terrorist activities is difficult, if not impossible, to obtain," "[v]ictims of terrorist attacks, if not dead, are often incapacitated and unable to testify about their

220.     This Court also has supplemental jurisdiction over claims arising from violations of state law because, pursuant to 28 U.S.C. § 1367, the facts in the claims arising from state law are so related to the Plaintiffs' claims under federal laws that they form part of the same case or controversy under Article III of the United States Constitution.

221.     This Court also has supplemental and personal jurisdiction over the defendants under the DC long arm jurisdiction statute pursuant to subsections  D.C. Code § 13-422 (2001) or that the court has personal jurisdiction pursuant to the **District of Columbia long-arm statute**, D.C. Code

222.     Other named and unnamed Defendants are similarly subject to the jurisdiction of this court by virtue of their corporate ties and/or business contacts and activities in this jurisdiction.

223.    Venue is proper in this judicial district pursuant to 28 USC 1391(d), in connection to 28 U.S.C.
        § 1350;

224.    Venue is also proper in this judicial district for all co-defendants in this instant case pursuant to
        28 USC 1391(b) and (c);

**Special Federal Question Jurisdiction Statement**

225.    Under the Foreign Sovereign Immunities Act, a federal law enacted in 1976, foreign countries
        normally cannot be sued in U.S. courts unless one of only a few specific exceptions applies. One of
        those exceptions, known as the "expropriation" exception according to Section 1605 (a) of the Act,
        applies to situations in which a foreign government has nationalized privately owned property. It
        allows lawsuits against foreign governments to go forward in the United States when "rights in
        property taken in violation of international law are in issue" and there is a commercial connection
        to the United States. Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784
        F.3d 804, 817-19 (D.C. Cir. 2015) (Due to the fact that the jurisprudence is still developing,
        Plaintiffs would temporarily not citing the Supreme Court's Decision.)

226.    Due to the fact that Plaintiff have "produced compelling, admissible evidence" that totalitarian
        China illegally detained Heping Li and "routinely tortures" its detainees.  Kim, 774 F.3d at 1049,
        Section 1605 (h) is also applicable in this case.

227.    The landmark case is In September 2011, Helmerich & Payne International filed a lawsuit in the
        U.S. District Court for the District of Columbia. They alleged, among other things, that Venezuela
        and its oil company had taken their property in violation of international law, and that the FSIA's
        expropriation exception gave the court jurisdiction over the lawsuit. Venezuela and the company
        asked the district court to dismiss the case, arguing that the expropriation exception did not apply.
        The district court agreed with them on the claim by Helmerich & Payne de Venezuela, because the
        company is a national of Venezuela. But it denied the motion to dismiss with regard to Helmerich &
        Payne International's claim, on the ground that the seizure of property owned by Helmerich &
        Payne de Venezuela "effectively took its interest in" the company as a "going concern." Helmerich
        & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir.
        2015) On appeal, the U.S. Court of Appeals for the D.C. Circuit ruled that both expropriation
        claims could go forward. Judge David Tatel wrote for the majority, in an opinion that was joined by
        Chief Judge Merrick Garland – President Barack Obama's nominee to fill the vacancy created by
        the death of Justice Antonin Scalia. To survive a motion to dismiss for lack of jurisdiction, the court
        of appeals explained, Helmerich & Payne's allegations only needed to meet what the court

described as a non-frivolity criteria. Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015)

228.   As a result, plaintiffs seeking to invoke the exception will need to plead facts and law at the start of the case sufficient to demonstrate that (i) there was a taking, (ii) the taking was in violation of international law, and (iii) "property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015)

229.   In this case, the example is the PRC's ICBC activities, which has involved both lawful and unlawful elements. Typically, to state a claim in federal court, regardless of whether the defendant is a sovereign or not, one need only satisfy Federal Rule of Civil Procedure 8, which sets a relatively low bar.

230.   The expropriation exception of the Foreign Sovereign Immunities Act of 1976 provides, in relevant part, that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case … in which rights in property taken in violation of international law are in issue." 28 U.S.C. § 1605(a)(3). The questions presented are: 1. Whether the complaint in this case adequately pled a "tak[ing] in violation of international law," 28 U.S.C. § 1605(a)(3), by alleging that petitioners seized all of respondent Helmerich & Payne de Venezuela, C.A. ("H&P-V")'s oil rigs and productive assets without compensation based on discriminatory animus toward H&P-V's U.S. ownership. 2. Whether the complaint in this case adequately pled an injury to respondent Helmerich & Payne International Drilling Co. ("H&P-IDC")'s "rights in property," 28 U.S.C. § 1605(a)(3), by alleging that petitioners seized H&P-IDC's entire drilling business in Venezuela, including all the productive assets of H&P-IDC's wholly owned subsidiary. 3. Whether the court of appeals correctly applied this Court's decision in Bell v. Hood, 327 U.S. 678, 682- 683 (1946), to hold that a court lacks subject-matter jurisdiction over a claim under the FSIA's expropriation exception only when the claim is "wholly insubstantial and frivolous." Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venezuela, 784 F.3d 804, 817-19 (D.C. Cir. 2015)

231.   Due to the fact that this instant case involved aggravated, wildly misconducts as state organized terrorist type persecution, extrajudicial hostage taking in illegality and misconducts of irregularity, for the purpose to implement expropriation, Section 1605 (h), as amended, is applicable;

232.   Plaintiffs' claims are actionable under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, and the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350, 13th Amendment and other related

Amendments of the Constitution of the United States, UN International Convention against Torture and Other Cruel, Inhuman or Degrading Treatment (hereinafter referred to as "CAT") because their injuries resulted from violations of specific, universal, and obligatory standards of international law as embodied in a number of treaty obligations binding on the United States and implemented Federal legislation.*  Defendants' conduct also violates the laws of the District of Columbia, including the State Constitution of the District of Columbia.

**Special Statement Regarding the Most Recent Landmark Case Wambier v. The Democratic People's Republic of Korea**

233.    This Honorable Court  made the history in its most recent landmark case as of  Wambier v. The Democratic People's Republic of Korea in which the Honorable Beryl A. Howell, the Chief Justice, granted Plaintiffs with default judgment and Otto and his parents are awarded damages totaling $501,134,683.80. (1:18-cv-977, DCDC, 2019) citing Hecht v. Ludwig, 82 F.3d 1085, 1092 (D.C. Cir. 1996).

234.    More and more Americans have become aware that the evil is not just North Korea.  Beijing totalitarian Regime under the name of "people's Republic of Chiona" is no less evil than its junior sibling, the  The Democratic People's Republic of Korea  It the District of Columbia which leaves a window ajar in promotion of international human rights, curbing the worst dictators worldwide by gifting the generations of free mankind with all these brilliant legal precedents in the memory of human history.

**STATEMENT OF FACTS**

*235.*    The Factual basis in this instant case has been briefly displayed in introduction of the parties and their respective roles in making of the factual basis of this case, subject to further discovery of evidence in support of this case. .

**CAUSES OF ACTION**

236.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs from 1 to 235 as though fully set forth herein:

237.    Plaintiffs' causes of action arise under and violate the following laws, agreements, conventions, resolutions, and treaties:

 ( a ) Illegal Expropriation against all Plaintiffs by all defendants;

238. More and more Americans have become aware that the evil is not just North Korea.  Beijing totalitarian Regime under the name of "People's Republic of China" is no less evil than its junior sibling, the  The Democratic People's Republic of Korea  It the District of Columbia which leaves a

window ajar in promotion of international human rights, curbing the worst dictators worldwide by gifting the generations of free mankind with all these brilliant legal precedents in the memory of human history.

**(b) Alien Tort Statute, 28 U.S.C. § 1350 as to Plaintiff Heping Li and Mary Roes;**

(c) Torture Victim Protection Act, 28 U.S.C. § 1350, as to Plaintiff Heping Li and Mary Roes;

( d ) Illegal Expropriation against all Plaintiffs by all defendants;

(e) State Organized Terrorist attacks, hostage taking  and distortion and attempted terrorist attacks and hostage taking against All Plaintiffs;

(f ) UN International Convention against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment G.A. res. 39/46, annex, 39 U.N. GAOR Supp. (No. 51) at 197, U.N. Doc. A/39/51 (1984), *entered into force* June 26, 1987 as to Plaintiff Heping Li and Mary Roes;*

(g) International Covenant on Civil and Political Rights, G.A. res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, *entered into force* Mar. 23, 1976; against All Plaintiffs;

(h) International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor (1930), *adopted* June 28, 1930, 39 U.N.T.S. 55 (*entered into force* May 1, 1932) against Heping Li and Mary Roes;

(i) Pain and Sufferings against Heping Li, Mary Roes, and Xiaogang Shi;

## *FIRST CLAIM FOR RELIEF*

**Illegal Expropriation** of Private Property in Violation of  Law of Nations

238.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs from 1 to 237 as though fully set forth herein:

239.    All Defendants, named and unnamed alike, have jointly expropriated by conspiracy, with extrajudicial or fake judicial actions and omission, through state organized terrorist violence and coercion under jungle rule,  in violation of international law, admittedly expropriated Plaintiffs 53 Units of legitimately owned ultra-expensive residential properties, 155 acres of land, one office building and approximately RMB 3.5 million, which is US$0.5 Million in cash deposits.

_____

*The United States ratified CAT, subject to certain declarations, reservations, and understandings, including that the treaty was not self-executing and required implementing legislation to be enforced by the U.S. Courts as Federal Penal Code Chapter 113C.

240.    The expropriation coupled with state organized violence, extrajudicial custody, and tortures,

tarnishing reputations, distorting American citizens causing severe medical consequences, without a
penny compensation,  are in violation of international law under any legal criteria;

241.    The total estimated value for the property illegally expropriated by Defendants is more than one
billion U.S. Dollars.

### SECOND CLAIM FOR RELIEF

### Torture, a Violation of International Law for Which the Alien Tort Statute
### and the Torture Victim Protection Act Provide Relief)
### (By Plaintiff Heping Li and Mary Roes)

242.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in
paragraphs 1 through 241 of this Complaint as if fully set forth herein in this Second
Claim for Relief.

243.    The Defendants' acts described in this Complaint caused direct and severe physical
and mental pain and suffering to the Plaintiffs and placed them at severe risk of death personal injury
and/or death in connection with their participation in, and support of, the peaceful exercise of their
rights of life, of freedom from illegal taking, freedom form extrajudicial imprisonment, from torture,
slave labor, free speech, and the right to hold, exercise and express their opinion and grievance.
Because the acts enabled by Defendants as described herein violated multiple
provisions prohibiting torture on an absolute basis including: (1) treaties binding on the United
States, (2) statutes adopted by the Congress of the United States implementing those treaty
obligations, (3) international and domestic judicial decisions applying and interpreting the
prohibition against cruel, inhuman, or degrading treatment or punishment, (4) administrative
regulations and international and domestic judicial decisions applying and interpreting the
prohibition against torture, and (5) a number of specific, universal, and obligatory standards that are
recognized to be part of customary international law, these acts constitute "tort[s] ... committed in
violation of the law of nations or a treaty of the United States" under the Alien Tort Statute (ATS),
28 U.S.C. § 1350.

244.    These acts also specifically constitute torture in violation of the Torture Victim
Protection Act (TVPA), 28 U.S.C. § 1350.

245.    Co-Defendants knew or should have known how serious would be the consequences as to
victims while they knowingly and readily participated in such conscience shocking illegal taking of
property for free, therefore they are liable for aiding and abetting and/or ratifying these abuses as
set forth in this cause of action. Consequently, Co-Defendants knowingly aided and abetted and/or
ratified these abuses, and did not act to prevent or punish these violations of human rights as

embodied in international law. Consequently, Co-Defendants aided and abetted and/or ratified these acts of torture in violation of international, federal, and state law. These violations and actions meet the definition of torture under the meaning of the TVPA, the ATS, and international treaties and U.S. laws and regulations, as well as customary international law, which condemn torture on an absolute basis, irrespective of the reasons why the abuses are inflicted.

246.    The Plaintiffs are therefore entitled on this basis to compensatory and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

### THIRD CLAIM FOR RELIEF

### (Cruel, Inhuman or Degrading Punishment or Treatment or Punishment, Violations of International Law for Which the Alien Tort Statute Provides Relief) (By Plaintiff Heping Li and Mary Roes)

247.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 246 of this Complaint as if fully set forth herein in this Third Claim for Relief.

248.    These acts of cruel, inhuman, or degrading treatment or punishment suffered by the Plaintiffs designated in this Second Claim for Relief, including physical injury and the severe physical and mental suffering associated therewith, were inflicted upon them by the joint and collusive actions of the Defendants and PRC government officials acting under color of law, through unlawful or unauthorized actions prohibited by international law. These acts had the intent and the effect of grossly humiliating, debasing, intimidating, and punishing the Plaintiffs, forcing them to act against their will and conscience, inciting fear and anguish, and seeking to break their physical and/or moral resistance.

249.    These acts of cruel, inhuman, or degrading treatment or punishment were inflicted on the Plaintiffs for purposes that include, among others, preventing them from exercising their free speech and free petitioning rights, and punishing them for exercising their right to defend their home and airing their grievance.

250.    Because the acts described herein violated the prohibitions against cruel, inhuman, or degrading punishment or treatment including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman, or degrading treatment or punishment, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against cruel, inhuman or degrading

treatment or punishment, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. § 1350.

250A. Defendants knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal taking of property for free, therefore they are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action. Consequently, Co-Defendants knowingly aided and abetted and/or ratified these abuses, and did not act to prevent or punish these violations of human rights as embodied in international law.

251.     Such Co-Defendant as ICBC is liable for aiding and abetting and/or ratification of the commission of these abuses under this cause of action.

252.     The Plaintiffs are therefore entitled on this basis to compensatory, consequential and punitive damages in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

**FOURTH CLAIM FOR RELIEF**
**(Arbitrary Arrest and Prolonged Detention, a Violation of International Law for Which the Alien Tort Statute and the Torture Victim Protection Act Provide Relief)**
**(By Plaintiff Heping Li and Mary Roes)**

253.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 252  of this Complaint as if fully set forth herein in this Fourth Claim for Relief.

254.     These acts of arbitrary arrest and long-term detention suffered by the Plaintiffs, started with illegal, extrajudicial, and terrorist type of custody taking, in violation of 28 USC 1605A(h) 2, which appears to be designated in this Third Claim for Relief, including arrest and detention for an unlawful purpose in violation of the rights to freedom to life, liberty and property, freedom of free expression of the plaintiff's grievance, freedom from illegal taking, were inflicted upon them by the joint and collusive actions of the Defendant government officials acting under color of law, albeit through, and in connection to, unlawful or unauthorized taking actions and for unlawful and unauthorized purposes.

255.     These acts caused direct physical and mental pain and suffering upon the Plaintiffs, caused loss of liberty and property, and placed them at severe risk of personal injury in connection with their participation in, and support of, the peaceful exercise of their rights of free speech and free

association, and their rights to hold, exercise and express their grievance to defend their home.

181A. Because the acts described herein violated provisions prohibiting arbitrary arrest and prolonged detention including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged detention, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged detention, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. § 1350.

256.   Co-Defendants ICBC knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal taking of property for free, therefore they are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action. Co-Defendant ICBC aided and abetted in the carrying out of these abuses, and did not act to prevent or punish these violations of human rights as embodied in international and domestic law.

257.   Co-Defendant is therefore liable for aiding and abetting and/or ratifying these abuses, as specified in this cause of action.

258.   Plaintiffs are therefore entitled on this basis to compensatory, consequential  and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

### FIFTH CLAIM FOR RELIEF

**(Forced Labor, a Violation of International Law for Which the Alien Tort Claims Act and the Torture Victims Protection Act Provide Relief)**
**(By Plaintiff Heping Li)**

259.   Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 258 of this Complaint as if fully set forth herein in this Fifth Claim for Relief.

260.   Plaintiff Heping Li  was placed in fear for their lives, were deprived of their freedom, and were forced to suffer severe physical and mental abuse associated with forcing them into working in the prison factories in inhumane conditions, by the joint and collusive actions of the Defendants government officials, and the corporate co-defendants acting under color of law, through unlawful or unauthorized actions.

261.   Because the acts described herein violated provisions prohibiting forced labor

including: (1) treaties binding on the United States, (2) international and domestic judicial decisions applying and interpreting the prohibition against forced labor, and (3) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against forced labor, and (4) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Claims Act, 28 U.S.C. § 1350.

262.    Co-Defendants knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal taking of property for free, therefore thay are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action. Nevertheless, Co-Defendants aided and abetted in the carrying out of these abuses, and did not act to prevent or punish these violations of human rights as embodied in international and domestic law.

263.    Co-DefendantI ICBC is liable for aiding and abetting and/or ratifying this cause of action. Plaintiff  Heping Li is therefore entitled on this basis to compensatory and punitive damages to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.


*SIXTH CLAIM FOR RELIEF*
**(Battery and Assault)**
**(By Plaintiff Heping Li and Mary Roes)**

264.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 263 of this Complaint as if fully set forth herein in this Sixth Claim for Relief.

265.    On information or belief, Defendant intentionally committed acts that resulted in harmful or offensive treatment of Plaintiffs' persons, and produced bodily harm. In some extreme cases, such harms directly leading to victims' death.  Plaintiffs did not consent to the contact and treatment that caused injury, damage, loss, death or harm to Plaintiffs and the victims plaintiffs represent. The acts described constitute battery, actionable under the laws of New York and the Federal Law of the United States.

266.    Co-Defendant ICBC knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal taking of property for free, therefore they are liable for aiding and abetting and/or ratifying these abuses as set forth nin this cause of action. Consequently, they are liable for aiding and abetting and/or

ratifying these abuses, as specified in this cause of action.

### Seventh CLAIM FOR RELIEF

**(False Imprisonment started with state organized terrorist attacks and hostage taking in violation 28 USC 1605A(h )2)**

**(By Plaintiff Heping Li and Mary Roes)**

267.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 266 of this Complaint as if fully set forth herein in this Seventh Claim for Relief.

268.    On information or belief, Defendants intentionally and unlawfully exercised force or the express or implied threat of force to restrain, detain or confine Plaintiffs on an arbitrary and unlawful basis. The restraint, detention or confinement compelled Plaintiffs to stay or go somewhere against their will for some appreciable time. Plaintiffs did not consent to this restraint, detention or confinement.

269.    Defendants' actions constituted false imprisonment under standards of law applied by the District of Columbia and of the United States.

270.    Co-Defendant ICBC knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal taking of property for free, therefore thay are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action.

271.    Co-Defendant ICBC is liable for aiding and abetting and/or ratifying these abuses as specified in this cause of action.

### EIGHTH CLAIM FOR RELIEF

**(Distortion and Blackmailing)**

**(As to Plaintiff Xiaogang Shi and Yanlan Huang, and Mary Roes)**

272.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 271 of this Complaint as if fully set forth herein in this Fourth Claim for Relief.

273.    With all the well established evidence of exoneration and innocence of related Plaintiffs in place, Defendants in this instant case did not cease to wrongfully pursue and distort Plaintiff Xiaogang Shi and Yanlan Huang, because they are targeting the remaining private property: 21 units of ultra expensive apartments under the lawful ownership of Plaintiff Xiaogang Shi.  Defendants, by themselves and/or through their underworld agents hiding in the United States, repeatedly delivered such ungrounded criminal subpoenas, Interpol Red Notice, to Mr. Xiaogang Shi, in the meantime to

place Plaintiff's Shi's privately owned property to be listed for unauthorized, illegal auction.

274.    Under the constant threats of being taken into hostage back to China under the torturous jail condition in addition to illegal expropriation of his 21 privately owned Apartment without a penny compensation, Mr.  Xiaogang Shi ended up having collapsed with cardiac arrest and stroke. He has since been live on tubes, life sustaining facility confined,  solely because of the growing threats of distortions against him by defendants, given to tortures and inhumane mistreatments against his relatives in China, particularly Heping Li, Tianying Deng, and Yanping Wang.

275.    Plaintiff Yalan Huang, in the wake of China's High Court's decision in overturning the intermediate People's Court's wrongful conviction, whose only factual and evidentiary basis: RMB 30,000,000.00Yuan as purchasing money for all these units of property was not embezzled funds, as it had been invoked in all cases regarding seizures and forfeiture, any factual and evidentiary basis to implicate Plaintiff Yanlan Huang has been rendered smashed into pieces, yet Defendants Prosecutors of Guilin City still caused Interpol to fraudulently issue Red Notice against Plaintiff yanlan Huang for the purpose to induce, coerce by blackmailing resulting in Plaintiff Huang's surrendering all her rights to life, liberty and property.

276.    All Defendants, named and unnamed  alike, are liable for distortion and blackmailing against these two Plaintiff.   .

*NINTH CLAIM FOR RELIEF*

(**Pain and Suffering**)

(**By Plaintiff Heping Li, Xiaogang Shi and Mary Roes**)

277.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 276 of this Complaint as if fully set forth herein in this Fourth Claim for Relief.

278.    These acts of arbitrary arrest and long-term detention suffered by the Plaintiffs, started with illegal, extrajudicial, and terrorist type of custody taking, in violation of 28 USC 1605A(h) 2, which appears to be designated in this Ninth Claim for Relief, including arrest and detention for an unlawful purpose in violation of the rights to freedom to life, liberty and property, freedom of free expression of the plaintiff's grievance, freedom from illegal taking, were inflicted upon them by the joint and collusive actions of the Defendant government officials acting under color of law, albeit through, and in connection to, unlawful or unauthorized taking actions and for unlawful and unauthorized purposes.

279.    Yet the assault of terrorist type extrajudicial hostage taking followed with ruthless, life

threatening tortures has caused Plaintiffs to have suffered great deal of pain and sufferings, both physically and psychologically .  Defendants repeatedly manifested attempt to impose the same threatening Plaintiff Xiaogang Shi as a looming over risk to life, liberty, integrity of body, and his sizable property under the risk of total loss, has caused the pain and sufferings to this degree that Plaintiff's Shi was collapsed into comma under the pressure and has since been laboring on life sustaining facilities since November 2018.

280.    These acts caused direct physical and mental pain and suffering upon the Plaintiffs, caused loss of liberty and property, and placed them at severe risk of personal injury. Because the acts described herein violated provisions prohibiting arbitrary arrest and prolonged detention including: (1) treaties binding on the United States, (2) statutes adopted by the Congress of the United States implementing those treaty obligations, (3) international and domestic judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged detention, (4) administrative regulations and international and domestic judicial decisions applying and interpreting the prohibition against arbitrary arrest and prolonged detention, and (5) a number of specific, universal, and obligatory standards that are recognized to be part of customary international law, these acts constitute "tort[s] ... committed in violation of the law of nations or a treaty of the United States" under the Alien Tort Statute, 28 U.S.C. § 1350.

281.    Co-Defendants ICBC knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal taking of property for free, therefore thay are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action. Co-Defendant ICBC aided and abetted in the carrying out of these abuses, and did not act to prevent or punish these violations of human rights as embodied in international and domestic law.

282.    Co-Defendant is therefore liable for aiding and abetting and/or ratifying these abuses, as specified in this cause of action.

283.    Plaintiffs are therefore entitled on this basis to compensatory, consequential and punitive damages, in amounts to be established at trial, and to such other declaratory and/or injunctive relief as may be deemed appropriate.

### *TENTH CLAIM FOR RELIEF*

**(Intentional Infliction of Emotional Distress)**

**(By All Plaintiffs Against All Defendants)**

284.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 283 of this Complaint as if fully set forth herein in this Tenth Claim for Relief.

On information or belief, Defendants intended to cause Plaintiffs to suffer emotional Distress by severely harmful or deadly force, or, in the alternative, (a) Defendant engaged in the conduct adversely affecting Plaintiffs fundamental rights, such as the rights to survival and rights to defend their residential homes, with reckless disregard of the life threatening risk facing the Plaintiffs, or facing the victims the Plaintiffs represent.  Yet Defendant intentionally or recklessly, by its egregious conducts and practices, caused Plaintiffs to suffer such severe emotional distress.

285.    Plaintiff Heping Li suffered severe abuse and emotional distress as a result of the conduct of the Defendants.

286.    Defendants' the most serious egregious conducts constitutes the intentional infliction of emotional distress and is actionable under the laws, standards, and causes of action as set forth in this complaint.

287.    Co-Defendant ICBC knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal taking of property for free, therefore it is liable for aiding and abetting and/or ratifying these abuses as set forth

in this cause of action.

## *ELEVENTH CLAIM FOR RELIEF*

**(Conversion, Unjust Enrichment)**

**(By All Plaintiffs Against All Defendants)**

288.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 287  of this Complaint as if fully set forth herein in this Tenth Claim for Relief. On information or belief, all Plaintiffs have suffered from irreversible property damages from illegal taking of their properties, and permanently depriving of their personal property permanently lost, stolen, and expropriated .

289. All Defendants are improperly, unethically, illegally and unjustly enriched by such intentional tortuous offenses against all defendants.

216.  Co-Defendants knew or should have known how serious would be the consequences as to victims while they knowingly and readily participated in such conscience shocking illegal expropriation  of property for free, therefore they are liable for aiding and abetting and/or ratifying these abuses as set forth in this cause of action.  Consequently, co-Defendant ICBC should be liable for aiding and abetting and/or ratifying these abuses as specified in this cause of action.

290. The unlawful, unfair, and fraudulent business acts and practices described herein constitute ongoing and continuous unfair business practices  prohibited by state, federal, and

international laws including but not limited to:  (1) Alien Tort Statute, 28 U.S.C. § 1350; (2) Torture Victim Protection Act, 28 U.S.C. § 1350; (3)18 U.S.C. § 2450 (federal statute criminalizing torture); (5) Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment; (6) International Covenant on Civil and Political Rights; (7) Universal Declaration of Human Rights; (8) Charter of the United Nations; (9)International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor.  Co-Defendant's acts described herein also violate universal, specific, and obligatory customary international law, which prohibit aiding and abetting, and conspiracy to commit, violations of *jus cogens* human rights norms.

291. All Defendants' practices described herein offend established public policies and involve business practices that are immoral, unethical, oppressive, unscrupulous and/or substantially

292. .Defendants have also acted contrary to public policy by being so unjustly enriched from the Plaintiffs' bloody and tearful plight.

## *TWELFTH CLAIM FOR RELIEF*

**(Civil Conspiracy)**

**(By All Plaintiffs Against All Defendants)**

293. Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in paragraphs 1 through 292  of this Complaint as if fully set forth herein in this Eleventh Claim for Relief.

293. Defendants and co-Defendants have apparently committed civil conspiracy to enable all these conscience shocking  tortuous acts to happen and get accomplished.

294. The unlawful, unfair, and fraudulent business acts and practices described herein this legal action constitute ongoing and continuous unfair business practices  prohibited by state, federal, and international laws including but not limited to:  (1) Alien Tort Statute, 28 U.S.C. § 1350; (2) Torture Victim Protection Act, 28 U.S.C. § 1350; (3)18 U.S.C. § 2450 (federal statute criminalizing torture); (5) Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment; (6) International Covenant on Civil andPolitical Rights; (7) Universal Declaration of Human Rights; (8) Charter of the United Nations; (9)International Labor Organization Convention No. 29 Concerning Forced or Compulsory Labor.  Defendant's acts described herein also violate universal, specific, and obligatory customary international law, which prohibit aiding and abetting, and conspiracy to commit, violations of *jus cogens* human rights norms.  Therefore, the alliance, joint ventures, trading partnership, bound, feud, in between CCP-Shanghai and all these named and unnamed multinational corporations Co-Defendants should be deemed as civil conspiracy to enable all the wrongs to occur.

**ABSENCE OF AVAILABLE AND EFFECTIVE REMEDIES IN CHINA**

295. Plaintiffs re-allege and incorporate by reference all preceding paragraphs from 1 to paragraph 296 as though fully set forth herein:

297. These claims are not precluded by the need or failure to exhaust local remedies as set out in the Section 1605 and  Torture Victim Protection Act since all Plaintiffs have made every effort to seek local remedies in China, and their efforts have proven pointless and futile.

298.  Plaintiff  Heping Li was exonerated and received token state compensation for his deprivation of liberty for 1815 days and nights behind bars, excluding his taken into hostage under the hands of Mafioso thugs in color of law.

299. Plaintiffs efforts to claim returning his 21 Units back to him started from Intermediate People's Court of Guilin City up to China's Supreme Court, yet nothing could be given back to him because the illegally expropriated property had apparently be stolen and consummated by all the participating corrupted communist officials and their white scarves the mentioned Taiwanese.

300. Plaintiff Heping Li's efforts to seek for returning his property has caused back fire, starting November 15, 2018, his overturned life sentence judgment was reopened.  Sale of Xiaogang Shi's remaining 21 Units of Apartments have been listed for sale by these Defendants.

301. Any further efforts to obtain relief in China could well result in serious reprisals against those making allegations of wrongdoing on the part of high level officials in the PRC, as well as against the local attorneys representing the complainants. High level officials of the PRC are involved in the abuses alleged in this complaint and in the ratification of these abuses. Taking into consideration that the PRC government used the courts of China to secure Plaintiffs' prolonged arbitrary arrests and detentions, using a highly controlled judicial process to do so, and taking into account the PRC government's refusal and/or inability to properly and effectively investigate acts of torture, cruel, inhuman or degrading treatment or punishment, and arbitrary arrest and prolonged detention and bring the perpetrators to justice, and given further other substantial indicators of governmental acquiescence in the violations of international law and its unwillingness to support legal initiatives that might be undertaken in PRC to obtain relief for Plaintiffs, efforts to secure remedies for them in the PRC, including lawsuits in Chinese courts, must be considered futile.

302. For these reasons, requirements for further exhaustion of efforts to obtain local relief should be considered waived and satisfied.

**STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11(b)(3)**

303.        Plaintiffs re-allege and incorporate by reference all preceding paragraphs from 1 to 239 as though fully set forth herein:

304.     Due to the unique circumstances of this case, specifically the fact that a substantial amount of the information is unavailable without the Defendants' cooperation, all the factual allegations are made because they "are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," pursuant to Rule 11(b)(3). Fed. R. Civ. P. 11(b)(3)

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against all Defendants jointly or severally  as follows:

**As to Plaintiff Heping Li:**

1.  US$25,980,946.00 for actual. compensatory and consequential damages as to Heping Li's 19 Units Apartments in Shanghai, which was illegally expropriated by Defendants in violation law of nations, based upon the current fair market value which was extra-judicially sold in November 2003;

2.  $1Million  for medical compensation;

3.  $19,600,000.00 for the total damage for devastating tortures during his wrongful imprisonment based upon per diem calculation in compensating Plaintiff Heping Li's being kept behind bars by State Organized terrorist hostage taking;

4.  Treble amount as Punitive damages for illegal expropriation,  defamation, intentional inflict of emotional distress.

Other reasonable incidental damages as to Plaintiff Heping Li.

**As to Plaintiff Yanlan Huang**

1. US$15Million actual and compensatory damages to Plaintiff Yalan Huang for her being deprived of her lawful interests in Yilan Development Group Co. Ltd; including her 51% shares in the expropriated corporate assets, based upon the market value in all three real properties;

2. US$ USD 29,150,000.00. for actual and consequential damages for her being ripped off her opportunity in corporate  development but for the illegal expropriation under whatever excuses.

3. Treble amount as Punitive damages for illegal expropriation,  defamation, intentional inflict of emotional distress.

**As to Plaintiff Xiaogang Shi**

1.  $US$30,714,285.00 as actual and compensatory damages for ongoing illegal expropriation in violation of international law.

2.  $2Million  for medical compensation;

3.  $9,600,000.00 for Plaintiff's Xiaogang Shi's pain and sufferings from Defendants' repeated threats, harassments, distortions and intimidations by the Defendants;

4.  Treble amount of Punitive damages for illegal expropriation,  defamation, intentional inflict of emotional distress.

Injunctive Relief by Restraining Order to enjoin the on-going listing of Plaintiff's 21 Units ultra expensive Apartment in the heart of Shanghai City, China;

Have Plaintiff's Xiaogang Shi's these real properties been sold and retrieval be too late, Defendants must disgorge all the sale proceeds, principal plus interests, to Plaintiff, according to the present fair market value, which is, in no circumstances be less than US$30Millions.

Injunctive relief which orders all the Defendants except Defendant ICBC, to immediately cease and discontinue further defamation using the Chinazi affiliated, Nazi inherited Interpol in Leon, France, as their instrumentation to continue defamatory campaign against Plaintiff Yanlan Huang, and/or all other plaintiffs.

To All Plaintiffs, including unnamed Plaintiff Mary Roes:

Actual Damages and punitive damages/treble damages shall be determined by the Jury upon proving in the Court.

For declaratory relief determining that the actions of the Defendants constituted violations of international law, specifically, that such violations included prohibited acts of illegal expropriation of private properties in violation of law of nations,  torture, cruel, inhuman or degrading treatment, which has caused such severe consequences as permanent disability, and severe and irreparable bodily and emotional injuries, and arbitrary arrest and prolonged detention for clueless and frivolous criminal prosecutions, tortures in violation of UN Convention Against Torture, numerous other international treaty obligations binding on the United States, and domestic laws and regulations implementing such standards, including the Torture Victim Protection Act, and other enumerated causes of action in this Complaint;

For affirmative action by the Defendants to refrain from initiating further retaliatory persecution against the Plaintiffs' relatives living within Defendant's jurisdiction in China;

For injunctive relief to outlaw such extra-judicial imprisonment as running and operating Re-Education through Coerced Labor Concentration Camps.

For injunctive relief to order the co-defendants to discontinue aiding, abetting, supporting, financing and subsidizing the Defendants by enabling them to further commit all sort of anti-humanity offenses and to take affirmative actions to prevent such aforementioned abuses from taking place in the future

For costs of the litigation, including, attorneys' fees; and

For such other relief as the Court deems just and proper.


**Exhibits Will be Submitted Separately Shortly Thereafter**

All Exhibits in support of these Plaintiffs' claims will be respectfully submitted in separate filing due to malfunctioning of scanning machine and other technical break-down reparation takes time during this devastating Covid 19 Pandemic season.

**<u>Trial of facts by jury is respectfully prayed.</u>**

Plaintiffs respectfully that all facts of this case be tired by the Jury.

Respectfully submitted this by.

/s/Ning Ye, Esq.
Attorney at Law
Counsel for the Plaintiffs
135-11 38th Avenue, #1A
Flushing, NY 11354
Tel.:718-308-6626
Fax: 718-228-5816
Email: *yeningusa@gmail.com*

Dated: July 22, 2020